CARLA FITZPATRICK, APPELLANT, V. U S WEST, INC., A COLORADO
CORPORATION, ET AL., APPELLEES.

518 N.W.2d 107

Filed July 1, 1994.   No. S-92-580.

James E. Harris and Timothy K. Kelso, of Harris, Feldman, Stumpf Law Offices, for appellant.

George A. Carroll and Richard Johnson for appellees U S West, Inc., and Northwestern Bell Telephone Company.

Michael G. Mullin, of McGrath, North, Mullin & Kratz, P.C., for appellees AT&T, Inc., and AT&T Communications of the Midwest, Inc.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

LANPHIER, J.

The appellant, Carla Fitzpatrick, initiated this action in Douglas County District Court to recover damages for personal injuries sustained in an explosion which occurred on June 17, 1989, in an underground vault she was working in. At the time of the accident, she was employed by the Omaha Public Power District (OPPD), which was hired by appellee U S West, Inc., to reconnect electrical service to a building near the vault. U S West was the owner of the real estate where the vault was

located, but OPPD had been granted an exclusive easement to the vault and had sole access to the vault in which electrical equipment and connections were located. Fitzpatrick named as defendants the following: U S West, Inc., and Northwestern Bell Telephone Company (collectively U S West); AT&T, Inc., and AT&T Communications of the Midwest, Inc. (collectively AT&T); National Electric Company, Inc.; and OPPD. According to Fitzpatrick's third amended petition, OPPD was named as a defendant solely for the purpose of preserving its subrogation interest for amounts paid under the Nebraska Workers' Compensation Act pursuant to Neb. Rev. Stat. § 48-118 (Reissue 1988). The order Fitzpatrick appeals from did not address OPPD as a defendant, and consequently there are no issues involving OPPD as a defendant before us. Fitzpatrick filed a motion for partial summary judgment, and each of the defendants, except OPPD, filed a motion for summary judgment. The district court granted those defendants' motions for summary judgment. The grant of summary judgment in favor of National Electric Company was not appealed, and on January 12, 1993, Fitzpatrick and AT&T filed a stipulation dismissing AT&T from this action. Thus, the appeal concerns only the grant of summary judgment rendered in favor of U S West. Fitzpatrick appealed the district court's order to the Court of Appeals. We, however, removed the case to this court on our own motion in order to regulate the caseloads of the appellate courts.

The argument underlying Fitzpatrick's appeal is that the trial court erroneously analyzed this case on the theory of premises liability. Fitzpatrick states that "this action was brought under the dangerous instrumentality rule whereunder liability may be imposed on the employer of an independent contractor whose negligence causes injury." Brief for appellant at 2. Even when analyzed on this basis, Fitzpatrick's claim must fail. Contrary to what Fitzpatrick asserts, U S West did not have a nondelegable duty to protect Fitzpatrick from harm. Although U S West employed OPPD, a public utility, it had no control over OPPD's operations. U S West, as the employer of an independent contractor, had no control over the independent contractor herein, OPPD, and no legal basis for imposing

liability exists. We, therefore, affirm the judgment of the district court.

## BACKGROUND

On June 17, 1989, Fitzpatrick, then employed by OPPD as a cable splicer, was one member of a crew reconnecting electrical service to a building owned by U S West. Reconnecting the electrical service to the building, located in downtown Omaha, required that certain operations be performed in underground cable vaults nearby. In order to reconnect the electrical service, Fitzpatrick was required to go inside the vault containing circuit No. 27. The crew foreman decided not to shut down circuit No. 27, and Fitzpatrick knew that circuit No. 27 had not been shut down. Inside the vault was a transformer. The transformer was used to convert, or step down, the 14,100 volts coming in through the primary cables to a lesser voltage, referred to as the secondary voltage. Here, the lesser, secondary voltage was directed to the building owned by U S West. Attached to the transformer was a network protector. The network protector, according to Fitzpatrick, acts as a circuit breaker. When reconnecting electrical service, the network protector must be grounded. Having tested a portion of the network protector to assure that it was deenergized, Fitzpatrick went about grounding the network protector. She had just finished attaching an uninsulated grounding cable when she saw a "big ball of fire." Before she was able to get out of the vault, she sustained serious burns.

U S West concedes that it requested and paid OPPD to disconnect and reconnect electrical power to its building located in downtown Omaha, near 19th and Douglas Streets. Although U S West owned the vault, it had granted OPPD an easement to build, maintain, and repair the underground utility vault. All the equipment within the vault was owned by OPPD. U S West did not have access to the vault, nor control over the activities that went on there. The vault was under the exclusive control of OPPD.

## STANDARD OF REVIEW

In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom

the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Schmidt v. Omaha Pub. Power Dist.*, 245 Neb. 776, 515 N.W.2d 756 (1994). Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id.*

## ASSIGNMENTS OF ERROR

Fitzpatrick asserts that the trial court erred (1) in sustaining the defendants' motions for summary judgment and dismissing the case using theories of premises liability, (2) in failing to apply the appropriate law imposing liability upon employers of independent contractors under certain and limited circumstances, and (3) in overruling her motion for partial summary judgment seeking a determination of the duties owed her. Nowhere does Fitzpatrick argue that genuine issues of material fact exist; rather, Fitzpatrick's argument seems to be that, given the facts of the case, U S West was not entitled to judgment as a matter of law.

## THEORY OF RECOVERY PLED

Fitzpatrick first assigns as error the fact that the trial court's ruling was based upon premises liability. The third amended petition sounds in negligence. Although it would appear from the petition that Fitzpatrick may have wished to proceed on the basis of premises liability, it also appears that she may have wished to proceed in the context of employer and independent contractor. Although a petition should not leave uncertainty as to the theory on which the pleader wishes to proceed, we have held that in actions not involving extraordinary remedies, general pleadings are to be liberally construed in favor of the pleader. *Hutmacher v. City of Mead*, 230 Neb. 78, 430 N.W.2d 276 (1988). Thus, since Fitzpatrick stated the theory of employer and independent contractor liability as the theory upon which she wishes to proceed, and since her pleadings support her contention, we shall proceed on that basis.

## INDEPENDENT CONTRACTOR

Fitzpatrick asserts this case should have been analyzed under the "nondelegable duty" exception to the general rule that the employer of an independent contractor is not liable for physical harm caused to another by the acts or omissions of the contractor or his servants. *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993).

Of course, underlying Fitzpatrick's assertion is the assumption that the relationship between U S West and OPPD was that of employer and independent contractor. Thus, we are confronted with the threshold question of how to characterize U S West's relationship with OPPD. U S West has conceded that it requested and paid OPPD to disconnect and reconnect electrical power to its building; however, U S West points out that it was not subcontracting work which it could otherwise perform. OPPD has a sanctioned monopoly on the transmission of electrical power. As U S West points out, Neb. Rev. Stat. § 86-304 (Reissue 1987) makes it unlawful to "interfere with the transmission of . . . light, heat and power in this state." Moreover, it is undisputed that U S West did not have access to the underground vault in which the necessary work was to be done.

U S West argues that the relationship was not that of employer and independent contractor, nor that of principal and agent either. U S West asks that we recognize a new category for public utilities and their customers. However, U S West cites no authority, and we can find none, to support recognition of this third type of relationship, customer and public utility. Neither are we persuaded that such a category is necessary or beneficial to the resolution of this case.

In Nebraska, one acting on behalf of another may do so as an agent or an independent contractor. *Delicious Foods Co. v. Millard Warehouse*, 244 Neb. 449, 507 N.W.2d 631 (1993). The factors to be considered in distinguishing between the two are (1) the extent of control which, by the agreement, the employer may exercise over the details of the work; (2) whether the one employed is engaged in a distinct occupation or business; (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or

by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer or the one employed supplies the instrumentalities, tools, and place of work for the one doing the work; (6) the length of time for which the one employed is engaged; (7) the method of payment, whether by the time or by the job; (8) whether the work is a part of the regular business of the employer; (9) whether the parties believe they are creating an agency relationship; and (10) whether the employer is or is not in business. *Id.* See, also, *Erspamer Advertising Co. v. Dept. of Labor*, 214 Neb. 68, 333 N.W.2d 646 (1983).

With regard to those factors, it is clear that OPPD was an independent contractor. OPPD admits that employees of U S West generally had no right or authority to control the manner in which OPPD's representatives, including Fitzpatrick, performed repairs or services within the cable vault. OPPD admits that on the date of the incident, no employee of U S West made any attempt to control the manner in which OPPD's representatives performed services or repairs within the cable vault. OPPD was the sole possessor and in exclusive control of the cable vault. No representatives of U S West were consulted on the decision to use an uninsulated jumper cable or on the decision to not deenergize circuit No. 27. OPPD was being paid $1,067.90 for the disconnection and reconnection of electrical service to the building. Thus, OPPD was the independent contractor of its employer, U S West.

## THEORIES OF RECOVERY

Having concluded that OPPD was U S West's independent contractor, we now move on to Fitzpatrick's proposed theories of recovery. Fitzpatrick states that "this action was brought under the dangerous instrumentality rule whereunder liability may be imposed on the employer of an independent contractor whose negligence causes injury." Brief for appellant at 2.

### NEGLIGENCE

For actionable negligence to exist, there must be a legal duty on the part of the defendant to protect the plaintiff from injury, a failure to discharge that duty, and damage proximately resulting from the undischarged duty. *Schmidt v. Omaha Pub.*

*Power Dist.*, 245 Neb. 776, 515 N.W.2d 756 (1994).

> " 'Duty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk. . . .
>
> "A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another."

*Id.* at 786, 515 N.W.2d at 763.

The question of whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. *Id.* Thus, the core issue of this appeal, given the facts as contained in the pleadings, depositions, admissions, stipulations, and affidavits in the record, is whether U S West owed a duty to Fitzpatrick.

Fitzpatrick acknowledges the general rule with regard to the liability of an employer of an independent contractor: "[T]he employer of an independent contractor is not liable for physical harm caused to another by the acts or omissions of the contractor or his servants." *Erickson v. Monarch Indus.*, 216 Neb. 875, 879, 347 N.W.2d 99, 105 (1984). See, also, *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993). However, Fitzpatrick asserts that U S West should be held liable under an exception to the general rule. We have stated that the employer of an independent contractor may be liable (1) if the employer retains control over the contractor's work or (2) if, by rule of law or statute, the employer has a nondelegable duty to protect another from harm caused by the contractor. *Id.* As a result of a nondelegable duty, the responsibility or ultimate liability for proper performance of a duty cannot be delegated, although actual performance of the task required by a nondelegable duty may be done by another. *Foltz v. Northwestern Bell Tel. Co.*, 221 Neb. 201, 376 N.W.2d 301 (1985).

Fitzpatrick argues that there are five common-law doctrines which impose nondelegable duties upon U S West as the employer of an independent contractor. As Fitzpatrick

describes them, the doctrines are (1) a duty to provide for the taking of precautions against dangerous conditions involved in work entrusted to a contractor, as described in the Restatement (Second) of Torts § 413 (1965); (2) a duty to take "special precautions" against recognizable peculiar risks of physical harm, described more fully in the Restatement, *supra*, § 416; (3) from the Restatement, *supra*, § 427, the rule that the employer of an independent contractor is liable for the negligence of the contractor in doing work which is inherently dangerous; (4) from *McKinstry v. County of Cass*, 228 Neb. 733, 424 N.W.2d 322 (1988); *Foltz v. Northwestern Bell Tel. Co., supra*; and *Erickson v. Monarch Indus., supra*, a nondelegable duty to use due care to protect persons against injury from the hazards or risks which inhere in the work to be undertaken; and (5) from the Restatement (Second) of Torts §§ 519 and 520 (1977), the rule that one who carries on an abnormally dangerous activity is strictly liable for harm resulting from the activity, although the utmost care has been taken to prevent the harm.

We will first discuss the first four asserted bases for the existence of a nondelegable duty. The fifth and last asserted basis will be discussed below in the subsection entitled "Strict Liability."

A careful review of the law cited by Fitzpatrick reveals that she is concentrating on U S West's position as the employer of an independent contractor to the exclusion of another pertinent fact—that the employer in this case has no authority over the independent contractor, which is a public utility. The existence of the employer-independent contractor relationship alone is insufficient to establish a duty owed by U S West to Fitzpatrick given the unique fact that U S West could not exercise any control over the operations of OPPD. Fitzpatrick has not cited any cases, and we have been unable to find any, in which the employer of an independent contractor was held liable for the negligence of the independent contractor where the employer could not exercise any authority over the operations of the independent contractor.

However, in *Green v. Duke Power Co.*, 305 N.C. 603, 290 S.E.2d 593 (1982), the Supreme Court of North Carolina held

that neither the owner nor the occupier of land upon which a power company had placed a transformer pursuant to an easement had a duty to make the transformer safe for children playing in the vicinity because the landowner had no control over the transformer or authority over the power company. In support of its holding, the court in *Green* stated:

> In instant case, neither the owner nor the occupier of the property . . . had the right to deny access to the transformer or to remedy the dangerous condition of the device. The transformer was the sole property of appellant Duke Power. It was placed on the premises pursuant to a valid easement . . . . Any interference or tampering with Duke's transformer would clearly encroach upon the rights granted to Duke by the easement. Likewise, locking or fencing the transformer would impair Duke's access to it and would be inconsistent with the terms of the easement. It was not reasonably practical for the owner of the realty . . . or the occupier . . . to prevent access to the transformer or to render it harmless.

*Id.* at 611, 290 S.E.2d at 598.

In another similar case, *Mark v. Pacific Gas and Electric Company*, 7 Cal. 3d 170, 496 P.2d 1276, 101 Cal. Rptr. 908 (1972), the Supreme Court of California held that a landlord breached no duty of care owed to a college student who was electrocuted while attempting to remove a light bulb from a street lamp located outside his bedroom window, in view of the fact that the landlord possessed no control or authority over the street lamp.

Absence of control over the utility was the determinative issue in the two cases above. In the case at hand, U S West did not and could not exercise any control over how OPPD conducted its operations. OPPD has stated that employees of U S West had no right or authority to control the manner in which OPPD's representatives, including Fitzpatrick, performed repairs or services within the cable vault. OPPD stated that on the date of the incident, no employee of U S West made any attempt to control the manner in which OPPD's representatives performed services or repairs within the cable vault. OPPD was

the sole possessor and in exclusive control of the cable vault. No representatives of U S West were consulted on the decision to use an uninsulated jumper cable or on the decision to not deenergize circuit No. 27.

It is important to note that U S West *could not* control OPPD's operations. This is not a case where U S West relinquished control or refused to exercise control it possessed. It simply had none. It would be futile to impose a duty to prevent harm upon one who has neither the opportunity nor the ability to reduce the risk of harm. Under these facts, as a matter of law, U S West had no legal duty to protect Fitzpatrick from the hazard of an explosion and fire in the underground cable vault.

## STRICT LIABILITY

There is an inherent inconsistency with respect to Fitzpatrick's last urged common-law basis for U S West's having a nondelegable duty. The following is Fitzpatrick's stated theory of recovery: "[T]his action was brought under the dangerous instrumentality rule whereunder liability may be imposed on the employer of an independent contractor whose negligence causes injury." Brief for appellant at 2. Clearly, Fitzpatrick's theory is based on negligence principles. However, she relies upon §§ 519 and 520 of the Restatement, *supra*, to establish a common-law basis for the existence of a nondelegable duty. Those sections of the Restatement concern strict liability. Strict liability is a doctrine that imposes liability without regard to breach of a duty. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 75 (5th ed. 1984). To hold U S West strictly liable for the harm caused Fitzpatrick, it would be unnecessary to establish that U S West owed her a nondelegable duty. Thus, those sections of the Restatement are inconsistent with and irrelevant to Fitzpatrick's stated theory of recovery.

Even if we give Fitzpatrick the benefit of the doubt and presume that she wished to state an alternative theory of recovery based upon principles of strict liability, her claim must fail. Fitzpatrick would have us hold that reconnecting electricity to a building is an ultrahazardous activity. The

activity being an ultrahazardous one, Fitzpatrick would then hold the owner of the building strictly liable for any harm proximately caused by its performance. We decline to do so. Fitzpatrick cites no authority in support of her position, and as far as we can determine, such a holding would be unprecedented. According to Prosser and Keeton in their oft-cited treatise on tort law, strict liability has been applied to the following "abnormally dangerous" or ultrahazardous activities, the terms generally being considered synonymous:

> water collected in quantity in a dangerous place, or allowed to percolate; explosives or inflammable liquids stored in quantity in the midst of a city; blasting; pile driving; crop dusting; the fumigation of part of a building with cyanide gas; drilling oil wells or operating refineries in thickly settled communities; an excavation letting in the sea; factories emitting smoke, dust or noxious gases in the midst of a town; roofs so constructed as to shed snow into a highway; and a dangerous party wall.

*Id*. at 549-50.

Things and activities not considered abnormally dangerous or ultrahazardous include:

> water in household pipes, the tank of a humidity system, or authorized utility mains; gas in a meter, electric wiring in a machine shop, and gasoline in a filling station; a dam in the natural bed of a stream; ordinary steam boilers; an ordinary fire in a factory; an automobile; Bermuda grass on a railroad right of way; a small quantity of dynamite kept for sale in a Texas hardware store; barnyard spray in a farmhouse; a division fence; the wall of a house left standing after a fire; coal mining operations regarded as usual and normal; vibrations from ordinary building construction; earth moving operations in grading a hillside; the construction of a railroad tunnel; and even a runaway horse.

*Id*. at 550-51.

Additionally, there is no basis in reason or logic for such a holding. Building owners and homeowners have no direct authority over how a public utility conducts its operations, even, as here, where the operations concern the owner's own

piece of property. It is best that building owners and homeowners have no direct authority, as employees of a public utility will presumably almost always be better qualified to determine how an operation should be conducted and what safety precautions should be taken. Absent negligence, we do not even hold power companies engaged in the transmission of high voltage electricity liable for the harm caused those who inadvertently come into contact with electrical lines. *Engleman v. Nebraska Public Power Dist.*, 228 Neb. 788, 424 N.W.2d 596 (1988). See, also, *Lorence v. Omaha P. P. Dist.*, 191 Neb. 68, 214 N.W.2d 238 (1974); *Gillotte v. Omaha Public Power Dist.*, 185 Neb. 296, 176 N.W.2d 24 (1970). We, therefore, refuse to rule as a matter of law that the connection of electricity to a building is an abnormally dangerous or ultrahazardous activity. Thus, U S West could not be held strictly liable for the harm caused Fitzpatrick.

## CONCLUSION

In this appeal from the district court's order granting U S West summary judgment, Fitzpatrick did not assert that there was a genuine issue of material fact to prevent summary judgment. Rather, she essentially argued that under the facts presented, U S West was not entitled to judgment as a matter of law. She contended that U S West as the employer of an independent contractor owed her a number of nondelegable duties which U S West breached. However, U S West, even as the employer of an independent contractor, could not control or have any authority over the operations conducted by its independent contractor, OPPD, a public utility. We determine that under the facts presented, U S West, as a matter of law, had no legal duty to protect Fitzpatrick from the hazard of an explosion and fire in the underground cable vault. Neither does the doctrine of strict liability impose liability on U S West. There being no genuine issue of material fact, we find that the grant of summary judgment by the district court was appropriate, and we affirm that court's decision.

AFFIRMED.