MIKE ANDERSON, APPELLANT, V. NASHUA CORPORATION, DEFENDANT AND THIRD-PARTY PLAINTIFF, LIBERTY MUTUAL INSURANCE COMPANY, DEFENDANT, AND W.S. BUNCH CO., A CORPORATION, ET AL., THIRD-PARTY DEFENDANTS, APPELLEES.

519 N.W.2d 275

Filed July 22, 1994.   No. S-92-802.

James E. Harris and Timothy K. Kelso, of Harris, Feldman, Stumpf Law Offices, for appellant.

Jay L. Welch, of Rickerson, Welch, Wulff & Childers, and J. Patrick Green for appellee Nashua Corp.

David D. Ernst and Lisa M. Meyer, of Gaines, Mullen, Pansing & Hogan, for appellee W.S. Bunch Co.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

LANPHIER, J.

This is an appeal by the plaintiff, Mike Anderson, of an order of the Douglas County District Court granting summary judgment on behalf of the defendant Nashua Corporation (Nashua). Nashua had hired Anderson's employer, W.S. Bunch Co. (Bunch), to paint the interior of several underground storage tanks on Nashua's property. Anderson was severely burned when the underground storage tank he was painting burst into flames while he was inside it. Anderson, having received workers' compensation benefits through Bunch, brought this action, predicated on strict liability and negligence, against Nashua. The issues presented concern the liability of an owner of property to an employee of an independent contractor. Nashua filed a third-party petition against Bunch and its president and vice president. Anderson then filed a motion for partial summary judgment, and Nashua filed a motion for summary judgment. The district court for Douglas County sustained Nashua's motion for summary judgment, held the third-party action was moot, and dismissed Anderson's action. On appeal, Anderson argues that Nashua should have been held strictly liable for conducting an ultrahazardous activity. Anderson also argues that Nashua should have been held strictly liable for violating health and safety regulations, specifically Neb. Rev. Stat. §§ 48-403 and 48-422 (Reissue 1988). With respect to his allegations of negligence, Anderson argues that the trial court should have held Nashua directly liable for its own negligence in failing to see that proper safety precautions were taken and vicariously liable for the negligence of its independent contractor, Bunch. We hold pursuant to *Plock v. Crossroads Joint Venture*, 239 Neb. 211, 475 N.W.2d 105 (1991), that Nashua could not be held vicariously liable for Bunch's negligence, since Bunch is immune from suit pursuant to the exclusivity provision of the workers' compensation laws. However, genuine issues of material fact exist with regard to whether Nashua was directly negligent. We therefore reverse that part of the district court's

holding and remand the cause for further proceedings consistent with this opinion.

## BACKGROUND

The defendant and third-party plaintiff, Nashua, owns and operates a manufacturing plant in Omaha, Nebraska. Nashua hired Bunch, a third-party defendant, to paint the interior of three underground storage tanks located outside the plant. Two of Bunch's employees, Anderson and Eddie Donner, were assigned to do the work.

On December 21, 1986, Anderson and Donner began to paint the first of the three tanks with an epoxy paint. The paint, as it cured, put off flammable vapors. The tank was 8 or 9 feet in diameter and "15 or 20 feet long." There was a single round entrance, approximately 18 inches in diameter, located in the middle of the top of the tank. A single non-explosive-proof light bulb was hanging over this entrance. Donner mixed the paint outside the tank. Anderson used a spray gun to apply paint to the inside of the tank. The first coat was applied without incident and dried overnight. The next day, when Anderson was almost finished with the second application, he started to signal Donner to send a ladder down for him. As he did so, he looked up at the manhole and noticed that the glove on his left hand had caught fire. The flames quickly spread over the rest of Anderson's body, and soon the tank was full of flames. Donner initially covered the manhole in an effort to snuff out the flames, but later pulled Anderson from the tank.

Anderson received benefits from Bunch's workers' compensation insurance carrier, the defendant Liberty Mutual Insurance Company.

## ASSIGNMENTS OF ERROR

Anderson's assignments of error, as restated, are that the trial court erred (1) in failing to hold Nashua strictly liable, having found that the work being performed was abnormally dangerous; (2) in determining that Anderson was not one to whom Nashua owed a nondelegable duty; (3) in determining that certain health and safety regulations, §§ 48-403 and 48-422, did not apply to Nashua; and (4) in applying *Plock, supra*, to the case at hand.

## STANDARD OF REVIEW

In an appellate review of a summary judgment, the appellate court reviews the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Horvath v. M.S.P. Resources, Inc., ante* p. 67, 517 N.W.2d 89 (1994). Summary judgment is proper when the pleadings, depositions, stipulations, and affidavits in the record disclose that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *In re Application of City of Lincoln*, 243 Neb. 458, 500 N.W.2d 183 (1993).

## STRICT LIABILITY

In two of his assignments of error, Anderson alleges that the trial court erred in not holding Nashua strictly liable for the injuries he sustained.

### COMMON LAW LIABILITY

Anderson first argues that since the trial court found that the work contracted for created an abnormally dangerous situation and since there is "no question that the activity was a direct and proximate cause of Plaintiff's injuries," the trial court should have held Nashua strictly liable. Brief for appellant at 21. We disagree.

It is true that the trial court, in its order granting Nashua's summary judgment, stated that "[t]he evidence shows that the work contracted for and undertaken creates an inherently or *abnormally dangerous situation.*" (Emphasis supplied.) However, we do not believe the trial court used the phrase "abnormally dangerous" in the sense in which Anderson asserts it was used. Anderson asserts the trial court used "abnormally dangerous" as a term of art. As a term of art, "abnormally dangerous" is considered interchangeable with "ultrahazardous" to define an activity that, when conducted, proximately causes harm to another, for which a possessor of

land is held strictly liable. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 78 at 555-56 (5th ed. 1984). Despite Anderson's assertion to the contrary, it is apparent from reading the trial court's order that the phrase "abnormally dangerous" was used as a synonym for "inherently dangerous," a different term of art. Nowhere in the order was the phrase "abnormally dangerous" used alone; it was always immediately preceded by the words "inherently or," so as to read "inherently or abnormally dangerous." Throughout the order, the trial court used the phrase only in the context of the nondelegable duty exception to the general rule that the employer of an independent contractor is not liable for the negligence of the independent contractor.

If we assume, as Anderson asserts, notwithstanding the foregoing, that the trial court used the phrase "abnormally dangerous" to mean ultrahazardous as that term is commonly used in the context of strict liability, we would not hold Nashua strictly liable for the injuries Anderson sustained while painting the underground tank.

Anderson has cited no authority to support the imposition of strict liability in this case. He merely relies upon NJI2d Civ. 8.41 comment at 540, which is the "Burden of Proof part of the Statement of the Case instruction for damages allegedly caused by ultrahazardous activities . . . ." Apparently, Anderson considers the instruction to be evidence of the law of Nebraska. To the contrary, the instructions contained in the second edition of the Nebraska Jury Instructions are designed to be used when they reflect the law and the pleadings and evidence call for such an instruction. Neb. Ct. R. Regarding Nebraska Jury Instructions.

The first issue we must address is whether Nebraska has adopted the doctrine of strict liability for ultrahazardous (or abnormally dangerous) activities. It is clear that the issue has never been expressly addressed by this court. In *Wendt v. Yant Construction Co.*, 125 Neb. 277, 280, 249 N.W. 599, 600 (1933), this court stated that "one who uses dynamite in blasting, so as to cause likelihood of risk to property, is liable, if damage to the property results, whether from direct impact of rock thrown out by the explosion or from concussion."

However, that case was tried to the jury on a negligence theory. In affirming the jury's verdict, this court stated the following: "The jury had testimony to warrant their verdict on the question of negligence. Certainly the appellants cannot complain that appellee was required to show more than the rule of law as to liability in this case." *Id.* at 280-81, 249 N.W. at 601.

In *Krance v. Faeh*, 215 Neb. 242, 338 N.W.2d 55 (1983), a strict liability instruction was given to the jury at trial. In that case, we held that the giving of the strict liability instruction was erroneous because the doctrine of strict liability was inapplicable given the relationship between the parties, which was that of lessor-lessee.

Most recently, in *Fitzpatrick v. U S West, Inc., ante* p. 225, 518 N.W.2d 107 (1994), we declined to impose the doctrine of strict liability on an employer of a public utility which had been hired to reconnect electrical power to a building.

In light of these cases, it appears that the doctrine of strict liability for ultrahazardous activities has not been adopted in Nebraska, but neither has it been repudiated. In any event, we decline in this case to rule on the applicability of the doctrine of strict liability for ultrahazardous activities. There is an insufficient basis for concluding that the activity undertaken is ultrahazardous.

## STATUTORY LIABILITY

Anderson also sought to hold Nashua strictly liable on a statutory basis for the injuries he sustained. Anderson alleges that Nashua violated § 48-403 and is therefore liable for damages to Anderson pursuant to § 48-422.

Section 48-403 states the following:

> If in any of the aforesaid places any process is carried on by which dust or fumes are caused, which may be inhaled by the persons employed therein, or if the air shall become exhausted or impure, there shall be provided a fan or other such mechanical device as will substantially carry away all such dust or fumes or other impurities, subject to the approval of the Department of Labor.

Section 48-422 states:

> Every person operating a plant where machinery is used

who shall violate any of the provisions of sections 48-401 to 48-424 shall be liable in damages to any person injured, as a result thereof, or to the heirs of any person who shall have died as a result thereof.

The trial court held that these health and safety regulations were inapplicable in the case at hand for two reasons: First, because the statutes do not apply to the employer-subcontractor relationship. Second, because a storage tank set apart from the plant is not the type of place in which the statutes require that the given precautions be taken. Anderson disagrees with the trial court's interpretation of the statutes.

In settling upon the meaning of a statute, we must determine and give effect to the purpose and intent of the Legislature *as ascertained from the entire language of the statute* considered in its plain, ordinary, and popular sense, it being our duty to discover, if possible, the Legislature's intent from the language of the statute itself. *In re Application of City of Lincoln*, 243 Neb. 458, 500 N.W.2d 183 (1993). Further, the components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. *Id*. Finally, if there is a conflict, the special provisions of a statute prevail over the general provisions in the same or other statutes. *Id*.

Anderson bases his argument partially on language found in § 48-403 and partially on language found in § 48-422. From § 48-403, he relies on the phrase "aforesaid places," which apparently refers to the places listed in Neb. Rev. Stat. §§ 48-401 and 48-402 (Reissue 1988): every factory, mill, or workshop; mercantile or mechanical establishment; or other building where one or more persons are employed. From § 48-422, Anderson relies on the phrase "any person" to show that the statutes were intended to apply to him.

Although it is true that Nashua does operate a factory and that Anderson is "any person," those facts alone do not mean the health and safety regulations are applicable here. At issue is, To whom and under what circumstances do the health and safety regulations apply?

First, regarding to whom the regulations apply, we find instructive the case of *Quist v. Duda*, 159 Neb. 393, 67 N.W.2d 481 (1954). In *Quist*, this court was confronted with the issue of whether one of the health and safety regulations applied to a landlord who owned an office building-parking garage. Our holding, that the regulations did not apply to the landlord, was not based upon any express statement, but upon the words used in the act. The words "employer" and "employee" were used throughout the act. From this language, we determined that the Legislature intended that the act's application be limited to the relationship of employer and employee. Although we were not specifically concerned with §§ 48-403 and 48-422 in *Quist*, those sections were a part of chapter 48, article 4, as was the section we were concerned with. Neither of those sections has been amended since *Quist* was decided. Although in these specific sections there are not as many references to the employer-employee relationship, we are convinced that the Legislature intended to limit the application of these sections to the employer-employee relationship. Thus, since that relationship does not exist between Nashua and Anderson, §§ 48-403 and 48-422 are not applicable here.

With regard to whether an underground tank apart from a factory is within the purview of the health and safety regulations, we again look to the plain language of the statutes. Section 48-403 refers to "aforesaid places." There are no places mentioned in § 48-403, and there is no definitional section of the act defining that phrase. However, §§ 48-401 and 48-402, which immediately precede § 48-403, refer to factories, mills, or workshops; mercantile or mechanical establishments; or other buildings where one or more persons are employed. It is clear that these are the "aforesaid places" referred to in § 48-403. These being the "aforesaid places," the trial court's determination was correct that Nashua did not violate the statutes by failing to ventilate the underground storage tank, located away from the building where the manufacturing takes place.

## NEGLIGENCE

Anderson's remaining assignments of error are interrelated

and will be addressed together. They combine to assert that the trial court erred in determining that as a matter of law, Nashua could not be held directly or vicariously liable for Anderson's injuries.

The trial court held that there was no pleading or evidence presented of any direct negligence on the part of Nashua which created a duty to Anderson. The trial court also found that although Nashua owed third parties a nondelegable duty to protect them from harm resulting from the inherently dangerous work, Nashua could not be held vicariously liable for Bunch's negligence. The trial court, applying *Plock v. Crossroads Joint Venture*, 239 Neb. 211, 475 N.W.2d 105 (1991), concluded that since Nashua's agent, Bunch, was immune from suit by virtue of the exclusivity of workers' compensation, so was the principal, Nashua.

Thus, the core issue of this appeal is whether, given the facts as contained in the pleadings, depositions, admissions, stipulations, and affidavits contained in the record, Nashua owed a duty to Anderson.

It is fundamental that for actionable negligence to exist, there must be a legal duty on the part of the defendant to protect the plaintiff from injury, a failure to discharge that duty, and damage proximately resulting from the undischarged duty. *Fitzpatrick v. U S West, Inc.*, ante p. 225, 518 N.W.2d 107 (1994); *Schmidt v. Omaha Pub. Power Dist.*, 245 Neb. 776, 515 N.W.2d 756 (1994).

> " ' "Duty" is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk. . . .
>
> " 'A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.' "

*Fitzpatrick, ante* at 232, 518 N.W.2d at 113. Accord *Schmidt, supra*.

The question of whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a

particular situation. *Fitzpatrick, supra; Schmidt, supra.*

Anderson argues that he has pled and presented facts to demonstrate that Nashua owed him duties of care, for the breach of which Nashua may be held liable. Anderson further argues that Nashua breached some of the duties directly and that Bunch breached some of the duties. With regard to the duties allegedly breached by Bunch, Anderson claims the duties were nondelegable and that Nashua would be vicariously liable. The allegations of Nashua's vicarious liability for Bunch's negligence and for Nashua's own direct negligence will be discussed in separate sections of this opinion.

## DIRECT NEGLIGENCE

First, we will address the duties allegedly breached directly by Nashua. In this respect, the trial court addressed only one duty, the duty to keep premises safe for business invitees. The trial court, citing *Plock*, noted that the duty to keep premises safe for business invitees has been modified in the landowner-independent contractor context. In that context, the landowner's duty to maintain the premises in a reasonably safe condition is limited to latent defects that the independent contractor or his employees do not have knowledge of. *Plock, supra.* The trial court found that the buildup of dangerous fumes was not a latent defect, but one which arose out of the work performed by the subcontractor. Thus, the trial court held that Nashua had no duty to protect Anderson from the harm resulting from the hazard. In this respect, the trial court's holding was proper. However, the facts Anderson pled and presented establish that Nashua had an additional duty.

There is a duty of due care imposed on an employer of an independent contractor when the independent contractor's work involves special risks or dangers, including work that is dangerous in the absence of special precautions. *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993). In *Parrish*, we outlined the duty as follows:

As expressed in Restatement (Second) of Torts § 416 (1965), if a general contractor hires an independent contractor to perform work which the general contractor "should recognize as likely to create during its progress a

peculiar risk of physical harm to others unless special precautions are taken," the general contractor may be liable for physical harm caused to employees of the subcontractor if the general contractor fails to exercise reasonable care to take such precautions, even though the general contractor has provided, in the contract or otherwise, that the subcontractor be responsible for such precautions.

*Id.* at 799-800, 496 N.W.2d at 913.

In *Parrish*, a " 'peculiar risk' " was defined as one which involves some special hazard resulting from the nature of the work done, which calls for some special precaution. *Id.* at 800, 496 N.W.2d at 913. Without question, the task to be completed by Bunch involved a "peculiar risk." Consequently, Nashua was required to exercise reasonable care to ensure that Bunch utilized proper safety precautions.

There was evidence adduced at the summary judgment hearing to the effect that the risk of a fire could have been significantly reduced. There was testimony from Bunch employees and experts to the effect that the use of an explosion-proof lamp, a ventilation fan, and an air monitor could have made performance of the work safe. Moreover, the contract between Nashua and Bunch illustrates that Nashua retained a substantial amount of control over the project. The contract contained "boilerplate" language on the reverse side relating to the owner's retaining control of the project. The contract, along with other provisions relating to control, contained the following clause:

RESERVATION OF RIGHTS: Buyer [Nashua] reserves the right to make changes in, or defer shipment of, this order or any part thereof, or to terminate all or any part of this order at any time, if Buyer's production plans change, are delayed or curtailed, or any contingencies interfere with the receipt, handling or stocking of the goods, or performance of the services, ordered herein. Buyer shall not be liable for any cost or expense incurred by Seller [Bunch], in connection with this order, after date of Seller's receipt of any such change or termination notice.

It is clear from this clause that Nashua retained enough control to implement whatever safety precautions it deemed necessary. Although a provision of the contract required Bunch to comply with the Occupational Safety and Health Act of 1970, among other laws, that provision would not serve to diminish the responsibility that accompanied Nashua's retained control. Thus, we conclude that there was sufficient evidence to present a genuine issue of material fact concerning Nashua's duty to protect Anderson from harm, and whether Nashua breached that duty by failing to exercise due care to protect Anderson from the hazard that resulted.

### VICARIOUS LIABILITY

The trial court determined as a matter of law that the work being conducted was inherently dangerous. As we stated above, the trial court then correctly decided that in light of the inherently dangerous work, Nashua had a nondelegable duty to protect third parties from harm resulting from negligently performed work. However, relying upon *Plock v. Crossroads Joint Venture*, 239 Neb. 211, 475 N.W.2d 105 (1991), the trial court concluded that Anderson, as an employee of the independent contractor employed by Nashua, was not one to whom Nashua could be held vicariously liable. Anderson argues that the trial court erred in applying *Plock* to the case at hand, since here different nondelegable duties are involved.

Generally, the employer of an independent contractor is not liable for physical harm caused to another by the acts or omissions of the contractor or his servants. *Fitzpatrick v. U S West, Inc., ante* p. 225, 518 N.W.2d 107 (1994); *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993). There are two recognized exceptions to the general rule. The employer of an independent contractor may be vicariously liable to a third party (1) if the employer retains control over the contractor's work or (2) if, by rule of law or statute, the employer has a nondelegable duty to protect another from harm caused by the contractor. *Fitzpatrick, supra; Parrish, supra.* However, notwithstanding these exceptions, we have held:

[T]he landowner employer's nondelegable duty to

maintain the premises in a safe condition does not extend to employees of an independent contractor or agent who are injured due to the failure of the independent contractor or agent to make those repairs and who, as a result, receive workers' compensation benefits.

*Plock*, 239 Neb. at 230-31, 475 N.W.2d at 118.

In *Plock*, the defendant, Crossroads Joint Venture (CJV), was the owner of the Crossroads Shopping Center in Omaha. CJV entered into a management agreement with MS Management Associates, Inc. (MSM), whereby MSM assumed responsibility for the management, control, and maintenance of the shopping center. Plock, the plaintiff, was an employee of MSM. He was injured when he stepped out of the sweeper truck he had been operating into an uncovered drain hole. The case was tried to a jury, which returned a verdict in favor of Plock. CJV appealed from the verdict and asserted that the trial court erred in failing to hold that CJV was immune from suit. CJV contended that it was immune because its agent, MSM, was liable to Plock only for workers' compensation benefits and that therefore CJV was immune from other common-law tort liability; and as the only liability of CJV was that imputed to it by its agent, and the agent being immune, CJV as the principal was also immune. We determined that CJV was immune. Consequently, we reversed the jury verdict and remanded the cause to the district court to enter judgment for the defendant.

Contrary to Anderson's assertion, our holding in *Plock* was not based on the nature of the nondelegable duty involved, but, rather, on the notion that in the context of vicarious liability, a principal cannot be liable where the agent is immune. Since Bunch, by virtue of the exclusivity provision of the workers' compensation laws, is immune from suit, Nashua, its employer-principal, necessarily cannot be held vicariously liable. In this respect, the trial court was correct, and this part of the judgment is affirmed.

## CONCLUSION

The district court's use of the term "abnormally dangerous" in its order was confusing. Despite the use of that term, we refuse to hold Nashua strictly liable for the harm arising out of

the performance of work conducted herein. The district court's determination that the health and safety regulations were not applicable to Nashua in the case at hand was correct. Also, the district court's application of *Plock v. Crossroads Joint Venture*, 239 Neb. 211, 475 N.W.2d 105 (1991), was appropriate under the circumstances of this case. However, the district court's grant of summary judgment was improper given the genuine issues of material fact surrounding the allegations of Nashua's direct negligence. Therefore, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.