Carol MARMO, et al., Plaintiffs,

v.

IBP, INC., Defendant.

Nos. 8:00CV527, 8:00CV529, 8:00CV530, 8:00CV531, 8:00CV532, 8:00CV533, 8:00CV534, 8:00CV535.

United States District Court, D. Nebraska.

Jan. 12, 2005.

———

Deanna J. Chang, Michael D. Goodstein, Stacey H. Myers, Resolution Law Group, P.C., Washington, DC, Rachel K. Alexander, Berens, Tate Law Firm, Richard A. DeWitt, Scott D. Jochim, David J. Skalka, Croker, Huck Law Firm, Omaha, NE, Robert S. Lannin, Shively Law Offices, Lincoln, NE, Thomas A. John, Hunsucker, Goodstein Law Firm, Indianapolis, IN, for Plaintiffs.

James W. Mizgala, John M. Rushing, Sherry A. Knutson, Stephen V. Beyer, Sidley, Austin Law Firm, Chicago, IL, Kelly R. Dahl, Steven D. Davidson, Baird, Holm Law Firm, Omaha, NE, Stephen J. Owens, Stinson, Morrison Law Firm, Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER
### (STRICT LIABILITY)

CAMP, District Judge.

This matter is before the Court in these consolidated cases on the Motion for Partial Summary Judgment (Strict Liability) filed by Defendant IBP, Inc. (8:00CV527, Filing No. 255; 8:00CV529, Filing No. 249; 8:00CV530, Filing No. 250; 8:00CV531, Filing No. 252; 8:00CV532, Filing No. 251; 8:00CV533, Filing No. 258; 8:00CV534, Filing No. 256; 8:00CV535, Filing No. 254; 8:00CV536, Filing No. 249; 8:00CV537, Filing No. 252; 8:01CV27, Filing No. 257; 8:01CV28, Filing No. 241; 8:02CV293, Filing No. 173). IBP contends that operation of its wastewater treatment facility does not constitute an abnormally dangerous or ultrahazardous activity, and therefore, IBP is entitled to summary judgment on the Plaintiffs' claims that IBP is strictly liable for their injuries. The Plaintiffs have opposed the motion. I have considered all evidence submitted by the parties and the arguments contained in the briefs.

### The Undisputed Facts

IBP's Statement of Undisputed Facts is set forth in its brief at pages 6 and 7 in paragraphs number 1(a) through (h). The facts are largely drawn from the Initial Report, and to a lesser extent from the Rebuttal Report, of the Plaintiffs' expert

witness James Joyce. (Filing No. 257, Davidson Aff. at Ex. 1) (hereafter "Initial Report") and Ex. 2 (hereafter "Rebuttal Report.") Consistent with the Court's local rules, the Plaintiffs have addressed each of IBP's factual assertions, and they unqualifiedly agreed with paragraphs 1(a), (b), (c), and (f). The Plaintiffs agreed with some fair qualification to paragraphs 1(e) and 1(g). In order to establish the need for those qualifications, perhaps, the Plaintiffs also supplemented the factual record with information from IBP's expert witness, Roy O. Ball. (Filing No. 315, Jochim Affidavit at Ball Report, 9–10, 13–14, 17).

IBP's slaughter operations in Dakota City, Nebraska, began in 1965, and IBP operated only the slaughter operations until 1989, when it also began operating a tannery. From 1965 through 1989, and thereafter, it is Ball's opinion that IBP's wastewater treatment facility used state-of-the-art technology. The anaerobic treatment process employed at IBP's wastewater treatment facility generates a gas that contains hydrogen sulfide. Hydrogen sulfide smells like rotten eggs. For many years, hydrogen sulfide from the IBP's wastewater treatment facility was released directly into the ambient air.

After IBP's tannery began operating in 1989, and until 1994, the tannery wastewater was treated in five uncovered lagoons along with wastewater from the slaughter operations. As a result, from 1989 to 1994, the amount of sulfur-containing wastewater discharged at the facility increased, and, according to the Plaintiffs, awareness of the offensive odor was heightened. In 1994, IBP constructed two covered anaerobic lagoons, and it appears undisputed that by 2001, IBP had constructed coverings for all the anaerobic lagoons used at the facility. These coverings capture the hydrogen sulfide and methane as it is emitted from the wastewater, allowing the emissions to be treated before they are released into the ambient air.

The Plaintiffs' expert, James Joyce, is a professional engineer from Houston, Texas, with experience in controlling odors from municipal and industrial wastewater treatment facilities. (Filing No. 257, Davidson Aff. At Ex. 1, Initial Report of Joyce dated February 2, 2002, "Initial Report"). Joyce states that hydrogen sulfide is a naturally occurring biological compound generated through the decomposition of organic materials. It is a typical byproduct of wastewater treatment, occurring in the submerged portions of sanitary sewers, force mains, and through some treatment processes. Wastewater treatment is a common activity, occurring in many cities throughout the country. The IBP wastewater treatment facility currently uses a system of covered anaerobic lagoons that prevent hydrogen sulfate and gases, including methane, from escaping directly into the ambient air. Captured gases are processed through a scrubbing system to remove sulfur, and then burned through a flare. The technology to cover lagoons has been available since 1974, and lagoon covering has been commonplace since the early 1980's. The Plaintiffs' odor complaints could have been prevented if the IBP lagoons were covered when first constructed. Joyce agrees with a 1974 EPA guidance document which states that odor problems can be avoided or controlled in all wastewater treatment systems. (Initial Report at 10–11, 14–17, 19, 25–6, and Rebuttal Report at 9).

IBP also asserts as an undisputed fact that federal law does not regulate hydrogen sulfide, because it is not a carcinogenic pollutant nor is it an EPA criteria pollutant. That statement was taken from Joyce's Initial Report. (Initial Report at 19). The Plaintiffs, however, dispute this fact for purposes of this motion. The Plaintiffs state that hydrogen sulfide is

designated as an "extremely hazardous substance" pursuant to the Emergency Planning and Community Right to Know Act, 42 U.S.C. §§ 11045(c)(4), 11023; 40 CFR Part 355, Appendix A; as a "hazardous substance" in the Comprehensive Response and Compensation Liability Act ("CERCLA") 42 U.S.C. §§ 9609(c) and 96020 and 40 C.F.R. 302.4; and as an "air pollutant" as defined by the Clean Air Act, 42 U.S.C. § 7602.

## Summary Judgment Standard

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 (8th Cir.2003). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the Declarations, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25, 106 S.Ct. 2548.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. 1348.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. 2548.

## Analysis

In 1994, the Nebraska Supreme Court had occasion to comment on the doctrine of strict liability applicable to ultrahazardous activities in two cases, *Anderson v. Nashua Corp.*, 246 Neb. 420, 519 N.W.2d 275 (1994) and *Fitzpatrick v. U.S. West, Inc.*, 246 Neb. 225, 518 N.W.2d 107 (1994). The plaintiff in *Anderson* had been painting an underground tank with paint that emitted flammable vapors. The vapors ignited, and the plaintiff was injured in the resulting fire. The Nebraska Supreme Court acknowledged that "the doctrine of strict liability for ultrahazardous activities has not been adopted in Nebraska, but neither has it been repudiated." 519 N.W.2d at 281. After acknowledging this, the court decided that it did not need adopt or repudiate in that case because there was an insufficient basis for finding that the activity that caused Anderson's injury was ultrahazardous.

In *Fitzpatrick*, the Nebraska Supreme Court mentioned the Restatement (Second) of Torts §§ 519 and 520 in its discussion of the doctrine of strict liability. Section 519 is an explanation of the doctrine, which states:

(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or

chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

Section 520, identifies the factors that a court may consider in determining whether an activity is ultrahazardous.

In determining whether an activity is abnormally dangerous, the following factors are to be considered:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

The *Fitzpatrick* court observed that "[s]trict liability is a doctrine that imposes liability without regard to breach of a duty" and even though "the utmost care has been taken to prevent the harm." 518 N.W.2d at 113, 115, citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 75 (5th ed.1984), and the Restatement (Second) of Torts §§ 519, 520 (1977). The Nebraska Supreme Court listed examples of activities that have been found to be abnormally dangerous, and those that have been found not to be:

[S]trict liability has been applied to the following "abnormally dangerous" or ul-

trahazardous activities[:] . . . water collected in quantity in a dangerous place, or allowed to percolate; explosives or inflammable liquids stored in quantity in the midst of a city; blasting; pile driving; crop dusting; the fumigation of part of a building with cyanide gas; drilling oil wells or operating refineries in thickly settled communities; an excavation letting in the sea; factories emitting smoke, dust or noxious gases in the midst of a town; roofs so constructed as to shed snow into a highway; and a dangerous party wall.

Things and activities not considered abnormally dangerous or ultrahazardous include: water in household pipes, the tank of a humidity system, or authorized utility mains; gas in a meter, electric wiring in a machine shop, and gasoline in a filling station; a dam in the natural bed of a stream; ordinary steam boilers; an ordinary fire in a factory; an automobile; Bermuda grass on a railroad right of way; a small quantity of dynamite kept for sale in a Texas hardware store; barnyard spray in a farmhouse; a division fence; the wall of a house left standing after a fire; coal mining operations regarded as usual and normal; vibrations from ordinary building construction; earth moving operations in grading a hillside; the construction of a railroad tunnel; and even a runaway horse.

*Id.* at 115 citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 75 (5th ed.1984). The *Fitzpatrick* court declined to find that an electrician's connection of electricity to a building is an abnormally dangerous or hazardous activity. *Id.*[1]

Under the facts of this case, this Court concludes that IBP is not engaged in an

---

**1.** *Anderson* and *Fitzpatrick* have not been materially expanded upon by the Nebraska Supreme Court in the intervening ten years, see

generally, *Ray v. Argos Corp.*, 259 Neb. 799, 612 N.W.2d 246, 250 (2000); and *Bargmann*

ultrahazardous activity in the operation of its wastewater treatment facility. In reaching this conclusion, I am guided by Comment (*l*) to Section 520, which states that whether an activity is abnormally dangerous is a question of law to be made by the court, and by the Nebraska Supreme Court's acceptance of this approach as reflected in *Anderson* and *Fitzpatrick.* In those cases, the Nebraska Supreme Court concluded that the doctrine of strict liability could not apply because the activities in those cases were not ultrahazardous.

In reaching this conclusion, the Court has considered the factors listed in Section 520 and the positions of the parties. Relying on Joyce's reports, IBP contends that this Court has undisputed evidence that the operation of a wastewater facility is not an abnormally dangerous activity, and that any alleged risk of wastewater treatment are avoidable with the exercise of due care. IBP argues that other courts have generally refused to apply the doctrine of strict liability in cases where the risks inherent in the activity can be reduced or limited by the exercise of due care, citing *Ballard v. Buckley Powder Co.,* 60 F.Supp.2d 1180, 1188–89 (D.Kan.1999)(blasting), *King v. United States,* 53 F.Supp.2d 1056, 1077 (D.Colo. 1999) reversed in part on other grounds 301 F.3d 1270, (10th Cir.2002)(campfire building in a forest); *Sprankle v. Bower Ammonia & Chemical Co.,* 824 F.2d 409, 415–16 (5th Cir.1987)(storage of anhydrous ammonia), *Richmond F. & P.R. Co. v. Davis Indus.,* 787 F.Supp. 572, 575 (E.D.Va.1992)(storage of air conditioners that leaked PCBs); and *Edwards v. Post Transportation Co.,* 228 Cal.App.3d 980, 279 Cal.Rptr. 231, 233–35 (1991)(delivery of sulfuric acid into underground tanks). Having reviewed the cases, I agree that a key consideration in a case like this is whether the risk of harm can be controlled or eliminated in the exercise of due care.

The Plaintiffs oppose IBP's motion on two main grounds. First, Plaintiffs argue that if IBP successfully defends its actions at trial by proving at trial that it exercised the utmost due care, then a jury should still be able to find IBP liable to Plaintiffs under a strict liability theory. In connection with this argument, the Plaintiffs observe that they are entitled under the federal pleading rules to plead in the alternative. Fed.R.Civ.P. 8(a) and (e)(2). I find the argument entirely unpersuasive because it ignores 1) that it is for the court to determine as a matter of law what constitutes an ultrahazardous activity; and 2) that this case is well beyond the pleading stage. Plaintiffs also argue that IBP's activities at the wastewater treatment facility are ultrahazardous because of the magnitude of the hydrogen sulfide emissions that are generated by the facility, even after the lagoons were covered. Contrary to IBP's characterization of hydrogen sulfide as a naturally occurring biological compound generated in nature, the Plaintiffs maintain that hydrogen sulfide is designated as an "extremely hazardous substance" in connection with at least three federal laws. See 40 C.F.R. Part 355, Appendix A; 40 C.F.R. Part 302.4; and 42 U.S.C. § 7602. Plaintiffs assert that even after the anaerobic lagoons were covered in 2001, IBP's wastewater treatment facility in Dakota City has emitted between 293 and 440 tons of hydrogen sulfide into the air every year. Filing No. 314, Affidavit of James Joyce dated December 8, 2004 ¶ 5c. They contend that the amount of hydrogen sulfide emitted makes IBP's operation of the wastewater treatment facility an ultrahazardous activity.

I am unpersuaded by the Plaintiffs' arguments. Because IBP's motion is pre-

*v. Soll Oil Co.,* 253 Neb. 1018, 574 N.W.2d 478, 486 (1998).

sented under Fed.R.Civ.P. 56, the Plaintiffs' burden as the non-moving party is to come forward with some evidence to show why summary judgment is not appropriate, and they cannot rest on their pleadings alone. Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court cannot permit Plaintiffs to rely on their pleadings alone at this stage of the litigation, and so that argument is rejected.

That hydrogen sulfide is viewed as a pollutant or hazardous substance under some federal laws is not sufficient to overcome this motion for partial summary judgment. I am persuaded by the logic of the Seventh Circuit Court of Appeals in *Indiana Harbor Belt R.R. Co. v. American Cyanamid Co.,* 916 F.2d 1174, 1181 (7th Cir.1990) which emphasized that "ultrahazardousness or abnormal dangerousness is, in the contemplation of the law at least, a property not of substances, but of activities." The Seventh Circuit Court has also stated that "[i]f the rule were otherwise, virtually any commercial on industrial activity involving substances which are dangerous only in the abstract automatically would be deemed as abnormally dangerous. This result would be intolerable." *City of Bloomington, Ind. v. Westinghouse Elec. Corp.,* 891 F.2d 611, 615–17 (7th Cir. 1989) (citation omitted). Moreover, even if this Court were to assume that the post–2001 emissions from IBP's facility are at the levels stated by the Plaintiffs, I see nothing in the record that establishes that these levels could not be reduced, or properly and safely managed in the exercise of due care.

Focusing on the IBP's activity—the operation of the wastewater treatment facility—I conclude that such an operation is not an ultrahazardous activity, and there is ample proof that the risk of harm associated with the emission of hydrogen sulfide can be controlled or eliminated with due care. Negligence, and not strict liability, is the more appropriate theory under which to proceed at the trial of these cases.

The Plaintiffs have failed to present evidence to establish the factors necessary to support a claim under the doctrine of strict liability, including evidence of a high degree of risk of harm to the person or property of others from the hydrogen sulfide emissions; the likelihood that harm, if it occurs, will be great; and IBP's inability to eliminate the risk by the exercise of reasonable care. The Plaintiffs' expert agrees that the covering of the anaerobic lagoons has made the emission levels dramatically drop and the offensive odor dissipate.

In reference to whether the activity is a matter of common usage, I find that the operation of wastewater treatment facilities is a common function of municipalities and of many industries, and that such facilities are located in both rural and urban areas. I am persuaded by Joyce's statements that the use of lagoon coverings and other available technology can enable IBP to captured the airborne hydrogen sulfide emitted from the wastewater treatment facility and treat it before it is released into the ambient air. Thus, the risks associated with the operation of wastewater treatment facilities and emissions from them can be controlled, reduced, and in some cases eliminated through the exercise of due care.

**Conclusion**

Applying the factors set forth in the Restatement (Second) of Torts §§ 519 and 520, and with the knowledge of the Nebraska Supreme Court's decisions of *Anderson* and *Fitzpatrick,* I conclude that the operation of IBP's wastewater treatment facility is not an abnormally dangerous or ultrahazardous activity, and that in

the exercise of due care, hydrogen sulfide emissions can be properly and safely managed. Accordingly, IBP is entitled to summary judgment as a matter of law on the Plaintiffs' strict liability claims.

IT IS ORDERED:

1. IBP, Inc.'s Motion for Partial Summary Judgment on the Plaintiff's Claim of Strict Liability (8:00CV527, Filing No. 255; 8:00CV529, Filing No. 248; 8:00CV530, Filing No. 249; 8:00CV531, Filing No. 251; 8:00CV532, Filing No. 250; 8:00CV533, Filing No. 257; 8:00CV534, Filing No. 255; 8:00CV535, Filing No. 253; 8:00CV536, Filing No. 248; 8:00CV537, Filing No. 251; 8:01CV27, Filing No. 256; 8:01CV28, Filing No. 240; 8:02CV293, Filing No. 172), is granted;

2. Judgment in favor of the Defendant IBP, Inc., on Plaintiffs' claims of strict liability shall be entered separately, at the conclusion of the cases.