BOARD OF TRUSTEES OF THE FIREMEN'S R. & P. FUND OF TULSA v. MILLER.

*99 P. 2d 146.*

No. 28813.   Jan. 9, 1940.

Rehearing Denied Feb. 6, 1940.

Application for Leave to File Second Petition for Rehearing Denied Feb. 27, 1940.

H. O. Bland, E. M. Gallaher, and Milton W. Hardy, all of Tulsa, for plaintiff in error.

James F. Lawrence and Eldon J. Dick, both of Tulsa, for defendant in error.

OSBORN, J. Verna Padgett Miller, formerly Verna Padgett, the widow of one Grover F. Padgett, hereinafter referred to as applicant, filed a claim before the board of trustees of the firemen's relief and pension fund for the city of Tulsa, wherein she sought a pension for herself and her minor children, relying upon the provisions of section 21, art. 2, Revised Ordinances of the city of Tulsa, and section 6101, O. S. 1931, 11 Okla. Stat. Ann. 364. Her deceased husband, Grover F. Padgett, had been a member of the fire department of the city of Tulsa for more than 12 years prior to his death. It was applicant's contention that his death was caused "in consequence of" the performance of his duties as a member of said fire department. The board of trustees denied the claim for a pension, and a written transcript of the evidence taken before said board was reviewed by the district court of Tulsa county on appeal from the order of the board, and resulted in a reversal of the decision of the board and an order directing payment of the pension to the applicant from the date of the death of the deceased fireman to the date of her remarriage and payment to the minor children until the youngest became 16 years of age. From the judgment of the district court, the board has appealed to this court.

The application states that on May 20, 1927, the deceased fireman sustained an injury while answering an alarm and proceeding to a fire when the fire truck in which he was riding collided with another vehicle and as a result of which collision the bones in the right foot and heel and ankle of deceased were crushed, broken, and shattered; that osteomyelitis developed in the heel bone of said foot and that the same never did heal, and said injury caused continuous intense physical and mental pain to the deceased which caused the deceased to become mentally unbalanced and irresponsible, and while in said condition, deceased committed suicide by drinking a quantity of carbolic acid, the date of his death being May 28, 1933.

The theory of the board is that the deceased had engaged in excessive gambling and sustained heavy losses a short time prior to his death, and that his remorse over said losses was the cause of the act of suicide, as definitely pointed out in three suicide notes written and left by the deceased. The notes set out the details, but we deem it unnecessary to quote them.

Expert and lay witnesses were presented by the applicant and respondent. The evidence is highly conflicting. Various lay witnesses testified with regard to the manifestations of mental disturbances of the deceased and as to his acts and conduct prior to the act of suicide. From the evidence of these witnesses it appears that Padgett, the deceased fireman, on May 20, 1927, was injured in a collision between a fire truck in which he was riding and another car, resulting in crushing his ankle or heel bone called the oscalcis; that the wound never healed, but continued to drain; that as a result of the pain and suffering he became nervous and developed a melancholy and morose disposition; that he was treated at the Mayo Clinic in Rochester, Minn.; that he feared the possibility of being forced to retire from the fire department on a pension and that he could not support his family on the amount of the pension which he would receive; that he attempted to procure money necessary to defray expenses of an operation on his foot and was unable to do so; that the bone was sloughing off; that he would on frequent occasions remove his shoes and socks and ask persons present to examine his foot and would explain in detail the nature of the injury and the character of the pain. All of the facts and circumstances detailed by the witnesses, relating to manifestations of mental disturbance and a history of the case, were incorporated in a hypothetical question and submitted to expert witnesses. The expert witness testifying in behalf of the applicant stated that the deceased at the time of the suicide was insane, and that the insanity was a progressive development and the cause of it was the injury to the foot and its failure to heal; that witness testified on cross-examination that, in his opinion, the gambling losses were "a mildly contributing cause."

Dr. W. J. Bryan, Jr., qualified as a psychiatrist, having given special attention to nervous and mental diseases, and testified in behalf of respondent that, from all the evidence and from all the information available pertaining to the character of the deceased, it was his opinion that the suicide was the result of a very acute depression of short duration; that it was premeditated over a short period of time, possibly 14 days. The witness further testified that the true causes of suicide are usually outlined in suicide notes and that the notes left by the deceased in this case outlined with clearness the source of the trouble and anxiety of the deceased. The witness further testified that the deceased was an excessive type of individual; that when such type is exhausted there is a quick sudden depression and an inability to run away from responsibilities; that the true and procuring cause of the suicide was that deceased "had exhausted the end of his activity through the destruction of his own credit, his losses gambling, the use of his friends." On cross-examination the witness testified that in his opinion the injury hereinabove referred to had nothing to do with the suicide.

We have heretofore held that the statutes involved herein should be liberally construed in favor of those to be benefited. We applied that rule in the case of In re Benson, 178 Okla. 299, 62 P. 2d 962, where the applicant died as a result of bronchial pneumonia which developed two days after he became too warm while on an inspection tour and removed his coat and cooled off suddenly. The rule was also applied in the case of Board of Trustees of the Firemen's Relief and Pension Fund v. Naughton, 180 Okla. 270, 68 P. 2d 845.

In the case of In re Benson, supra, we defined the terms "cause" and "consequence" and held that when an event is followed in natural sequence by a result which it is adapted to produce or aided in producing, the result is a consequence

588

of the event and the event is the result of a cause.

In the above-cited cases there was but little time intervening between the injury and the death. They were closely connected. The facts were such in those cases that it could be determined with reasonable certainty that the death was in consequence of the injury received. Intervening elements and factors could safely be eliminated. In the instant case we have an injury sustained on May 20, 1927. The applicant's testimony was to the effect that as a result of the injury there was continuous pain and continuous anxiety over a period of six years. For the greater portion of the time during this period the injury did not produce such physical or mental disability that would prevent the deceased fireman from working at his regular employment and earning wages. It is important to note that such condition continued for a period of six years. Eliminating the immediate effects of the gambling losses, there is no showing that the mental or physical condition was suddenly accelerated immediately prior to the suicide.

We cannot eliminate from consideration the suicide notes and evidence to the effect that "the true causes of suicide are usually outlined in suicide notes." In the light of all the evidence, we are driven to the conclusion that the judgment of the trial court is contrary to the clear weight thereof. Under the evidence shown in this record, we cannot hold that Padgett's suicide on May 28, 1933, was in consequence of the injury of May 20, 1927, in the light of the evidence outlining events immediately surrounding the act of suicide. We have here evidence of an immediate and procuring cause of death which is clearly sufficient to overcome an expressed opinion that a six-year-old physical injury and its complications were productive of a mental aberration sufficient to cause suicide. As we view it, the weight of the evidence is to the effect that the death was not "in consequence of" the performance of duty.

The judgment of the trial court is re-versed and the cause remanded, with directions to enter judgment in favor of the respondent.

WELCH, V. C. J., and RILEY, CORN, and DAVISON, JJ., concur.