493 So.2d 559 (1986)
STATE of Louisiana
v.
Nancy A. McGUIRE.
No. 86-K-0203.
Supreme Court of Louisiana.
September 8, 1986.
*560 William J. Guste, Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., New Orleans, Douglas H. Greenburg, Dist. Atty., John R. Walker, Asst. Dist. Atty., Houma, for applicant.
Prentiss Cox, Houma, for defendant-respondent.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT, PARISH OF TERREBONNE, STATE OF LOUISIANA
MARCUS, Justice.
Nancy A. McGuire was charged by bill of information with driving while intoxicated, third offense, in violation of La.R.S. 14:98. After trial by jury, defendant was found guilty as charged and sentenced to serve one year at hard labor, six months to be served without benefit of probation, parole or suspension of sentence. Defendant appealed assigning as error the admission into evidence at trial of the results of a photo-electric intoximeter (PEI) test performed on her. The court of appeal found the chemical test results to be inadmissible and reversed defendant's conviction and remanded the case to the trial court.[1] Upon application by the state, we granted certiorari to review the correctness of that decision.[2]
The record reveals that shortly before midnight on December 24, 1984, Officer Barry Hebert of the Louisiana State Police was dispatched to the scene of an accident on Louisiana Highway 24 in Gray, Louisiana. Upon his arrival, he observed that a station wagon had been struck in the right rear by a pickup truck. About ten minutes after his arrival, he noticed defendant, a thirty-six-year old female, crouching behind a wooden fence near the scene of the accident. Officer Hebert approached defendant and asked her if she was involved in the accident, to which she replied that she was not. After accompanying the officer to the accident scene and after having been advised of her Miranda rights, defendant admitted that she was the owner of the pickup truck. Officer Hebert testified that as they were walking to the accident scene, defendant was swaying and was unsteady on her feet. He also noticed a strong odor of alcohol on her breath and that her speech was slurred and her eyes were very bloodshot. After defendant failed a field sobriety test, Officer Hebert placed her under arrest at the accident scene and again advised her of her Miranda rights. En route to Troop C headquarters, defendant told Officer Hebert that she was the driver of the truck, that she had been arrested *561 for DWI before and that she was well aware of the consequences of being arrested for DWI.
At headquarters, Officer Hebert read to defendant the standard rights form relating to the chemical test for intoxication. Another officer testified that he was present in the room when the form was read out loud to defendant. Defendant signed the form in the presence of both officers and submitted to the photo-electric intoximeter test. The test, performed about 1:18 a.m., resulted in a final reading of a blood alcohol level of .206 grams percent.
The sole issue presented for our determination is whether the results of the photo-electric intoximeter test administered to defendant were admissible at trial under applicable law.
La.R.S. 32:661(C) outlines the procedures that must be followed by law enforcement officers prior to administering a chemical test to determine blood alcohol concentration.[3] At the time of the instant offense, La.R.S. 32:661(C) provided:
C. When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first inform the person of the consequences of a refusal and the consequences if the test is conducted and the results indicate a blood alcohol concentration of .10 percent or above by weight of alcohol in the blood. In addition, the law enforcement officer shall have the person sign a standard form advising such person of his constitutional rights. The law enforcement officer shall have the person sign a separate form advising such person of the consequences of his refusal to submit to a chemical test. However, a single combination of the two forms may be used. If the person is unable or unwilling to sign the form, the law enforcement officer shall certify that such person was informed of his constitutional rights and was unable or unwilling to sign said form.
The court of appeal, with one judge dissenting, determined that Officer Hebert informed defendant of the consequences of a refusal to take the test but said nothing to defendant about the consequences of taking the test and registering a .10 percent or higher blood alcohol content, that is, that a blood alcohol level of .10 percent or higher establishes "a conclusive presumption of intoxication." Relying upon State v. Downer, 460 So.2d 1184 (La.App. 2d Cir. 1984) and La.R.S. 32:661(C), the court concluded that the failure to inform defendant of this consequence made the test results inadmissible against her at trial. The state, agreeing with the dissenting judge, argues that defendant was sufficiently advised under La.R.S. 32:661(C) of the consequences of a test result of a blood alcohol level of .10 percent or higher, but in any event the test results were admissible at trial.
The record shows that Officer Hebert read to defendant in the presence of another officer a standard rights form relating to the chemical test for intoxication prior to administering the photo-electric intoximeter test.[4] Defendant signed the form and agreed to submit to the test. Section A of *562 the form pertains to "Consequences and Effects of Submission or Refusal to Submit to the Chemical Test" and one of the consequences of submission is that "... test results of .10 percent or above will be used against you in court." Section C of the form provides: "If you submit to the test, and the test results show a blood alcohol level of .10 percent or above, your driver's license shall be suspended for a minimum period of three (3) months." We think that this advice constitutes satisfactory compliance with that portion of La.R.S. 32:661(C) that requires a law enforcement official to inform the person of the consequences if the test is conducted and the results indicate a blood alcohol concentration of .10 percent or above. The court of appeal, while recognizing that Section C was later amended, found that the substance was the same and most of the phrasing was the same as when the Downer case was decided.[5] Relying upon Downer, it ruled that since defendant was not advised of the "presumption" resulting from blood alcohol concentration of .10 percent or above, she was not properly advised of the consequences of submitting to the test as required by La.R.S. 32:661(C). The court of appeal erred in reaching this conclusion. We do not think that La.R.S. 32:661(C) requires a law enforcement officer to embark upon a discussion of the legal consequences of a blood alcohol content of .10 percent or above other than to advise defendant of those consequences given in the instant case as set forth above.[6] Hence, we conclude that defendant was adequately advised *563 of the consequences of submitting to a blood alcohol test and registering a blood alcohol level of .10 percent or above.
The court of appeal further erred in finding that the test results were inadmissible. The sanction of inadmissibility is neither statutorily nor constitutionally compelled. The version of La.R.S. 32:661(C) relied upon in Downer was changed by La.Acts 1984, No. 409, § 1 (effective September 3, 1984) to delete the sanction of inadmissibility from the statute. This amended version of the statute was applicable in the instant case. The obvious legislative intent in deleting the provision was to do away with the sanction of inadmissibility where advisement procedures are not adequate. Hence, the sanction of inadmissibility would not be compelled by La.R.S. 32:661(C). Moreover, we have previously held that there is no infringement upon the right against self-incrimination involved in subjecting persons suspected of driving while intoxicated to the gathering of physical evidence such as a blood sample for scientific testing and no constitutional requirement that such persons be advised of the consequences of adverse test results. State v. Allen, 440 So.2d 1330 (La.1983); State v. Spence, 418 So.2d 583 (La.1982); see also Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).
In sum, we conclude that the court of appeal erred in finding that the results of the photo-electric intoximeter test of defendant were inadmissible at trial under applicable law. We must reverse.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed, and defendant's conviction and sentence are affirmed.
DIXON, C.J., respectfully dissents.
DENNIS, J., concurs in part and dissents in part with reasons.
NOTES
[1] 481 So.2d 740 (La.App. 1st Cir.1986).
[2] 486 So.2d 742 (La.1986).
[3] La.R.S. 32:661, sometimes referred to as the implied consent statute, was enacted in 1968. In 1972, subsection C was added to provide that a law enforcement official must inform the person of the consequences of a refusal to submit to the test. The section also incorporated a sanction of inadmissibility if the procedures were not complied with. By Acts 1983, No. 632, § 1, effective January 1, 1984, Section C was amended to add that a law enforcement officer must also inform the person of the consequences if the test is conducted and the results indicate a blood alcohol concentration of .10 percent or above. Acts 1984, No. 409, § 1, effective September 3, 1984, deleted the inadmissibility requirement. This is the version of the statute in effect on the date of the instant offense (December 24, 1984). Section C was once again amended by Acts 1985, No. 382, § 1, effective July 10, 1985, and provides for the reading by the officer of a standardized form approved by the Department of Public Safety and Corrections.
[4] The rights form read to defendant provided:

You are under arrest by a law enforcement officer who has reasonable grounds to believe that you were operating a vehicle while intoxicated. The law (R.S. 32:661-669) now will require you to take a chemical test to determine the alcoholic content of your blood.
A. These are the CONSEQUENCES AND EFFECTS OF SUBMISSION OR REFUSAL TO SUBMIT TO THE CHEMICAL TEST.
1. Refusal to submit to this chemical test shall result in the suspension of your driver's license for a minimum period of six (6) months.
2. Refusal to submit to this chemical test may also result in the loss of your vehicle registration and license plates.
3. Evidence of your refusal to submit to this chemical test or test results of .10 per cent or above will be used against you in court. [Emphasis added.]
NOTE: If a traffic fatality has occurred or a person has been seriously injured you may not refuse the chemical test, if you have refused or are unable to participate in a field sobriety test.
B. You have the OPTION OF AN ADDITIONAL TEST.
You will be allowed to call a physician or other qualified person of your choice to give you an additional test, at your expense, if you so desire.
C. If you submit to the test, and the test results show a blood alcohol level of .10 percent or above, your driver's license shall be suspended for a minimum period of three (3) months. [Emphasis added.]
D. These are your CONSTITUTIONAL RIGHTS:
1. You have the right to remain silent; anything you say may be used against you in court.
2. You have the right not to incriminate yourself, and you have the right to stop answering any questions, at any time you desire.
3. You have the right to the assistance of counsel and the right to consult an attorney before answering any questions.
4. You have the right to have an attorney present during any questioning or the giving of any statement.
5. If you cannot afford an attorney, the court will appoint an attorney to represent you.
NOTE: IF YOU REFUSE THE TEST UNTIL YOU CAN TALK TO A LAWYER, YOU WILL STILL LOSE YOUR LICENSE.
[5] The court of appeal correctly concluded that the substance of Section C applicable to Downer and Section C applicable to the instant case was virtually the same as it pertained to the advice that a law enforcement officer must give to an accused prior to administering a chemical test for intoxication. However, the difference between the two versions is that the sanction of inadmissibility if the procedures are not followed has been deleted from the amended version of Section C applicable to the instant case as will be discussed later in this opinion.
[6] In State v. Downer, 460 So.2d 1184 (La.App. 2d Cir.1984), defendant was read from a form advising him of the same consequences read to defendant in the instant case. The Downer court, finding that because defendant was not advised as to the "presumption" of intoxication resulting from a blood alcohol level of .10 percent or above, held that the test results were inadmissible. Since we have concluded that an advisement of consequences other than those set forth above is not required under La.R.S. 32:661(C), State v. Downer, supra, is overruled. We note that La.R.S. 32:661(C) was amended by La. Acts 1985, No. 382, § 1, effective July 10, 1985 (not applicable here) to eliminate any confusion as to what amounts to an adequate advisement. Section C now sets forth what must be contained in a standard form and states in pertinent part:

C. (1) When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first read to the person a standardized form approved by the Department of Public Safety and Corrections. The department is authorized to use such language in the form as it, in its sole discretion, deems proper, provided that the form does inform the person of the following:
(a) His constitutional rights under Miranda v. Arizona; [footnote omitted]
(b) That his driving privileges can be suspended for refusing to submit to the chemical test; and
(c) That his driving privileges can be suspended if he submits to the chemical test and such test results show a blood alcohol level of .10 percent or above.
This amendment had the effect of legislatively overruling State v. Downer, supra.