SUNRISE COUNTRY MANOR, FORMERLY KNOWN AS MILFORD REST HOME, APPELLEE, v. NEBRASKA DEPARTMENT OF SOCIAL SERVICES, APPELLANT.

523 N.W.2d 499

Filed October 28, 1994.   No. S-93-118.

Don Stenberg, Attorney General, and Royce N. Harper for appellant.

Robert L. Lepp and Mark A. Pieper, of McGill, Gotsdiner, Workman & Lepp, P.C., for appellee.

HASTINGS, C.J., WHITE, CAPORALE, and FAHRNBRUCH, JJ., and BOSLAUGH, J., Retired.

FAHRNBRUCH, J.

The Nebraska Department of Social Services (Department) appeals a decision of the district court reversing an order of the Department's director which disallowed an interest expense claimed by Sunrise Country Manor (Sunrise), a nursing home facility.

We reverse the order of the district court for Lancaster County and remand the cause with direction to reinstate the director's order.

## STANDARD OF REVIEW

The Department, as an administrative agency of the State of Nebraska, has appealed pursuant to the Administrative Procedure Act (APA), Neb. Rev. Stat. § 84-901 et seq. (Reissue

1987 & Cum. Supp. 1992).

When a petition instituting review pursuant to the APA is filed in the district court, the review by the district court is de novo on the record. § 84-917(5)(a); *Crawford v. Department of Motor Vehicles, ante* p. 319, 518 N.W.2d 148 (1994).

The judgment rendered or final order made by the district court in an APA appeal may be reversed, vacated, or modified by the Supreme Court or the Court of Appeals for errors appearing on the record. § 84-918(3); *James v. Harvey, ante* p. 329, 518 N.W.2d 150 (1994); *Crawford v. Department of Motor Vehicles, supra.* When reviewing a judgment for errors appearing on the record in an APA appeal, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Crawford v. Department of Motor Vehicles, supra.*

## FACTS

Review of this case is hampered because many of the parties' citations to the record in their briefs are insufficient to verify the facts as stated, and to that extent the briefs do not comply with our rules. See Neb. Ct. R. of Prac. 9D(1)f (rev. 1992) (stating that "every recitation of fact . . . shall be annotated to the record . . . ."). Furthermore, the parties presented little or no testimony at the hearing as to many of the exhibits entered into evidence, even though a number of those exhibits were accounting and auditing records which were at least somewhat technical in nature. As best we can determine from the record before us, the facts of this case are as follows:

Sunrise, formerly known as Milford Rest Home, is a 72-bed nursing home facility located in Milford. The facility serves many older and "heavier care" patients, including a very high "mix" of medicaid patients, and has entered into a "Medical Assistance Long Term Care Provider Agreement" with the Department.

As a provider of medicare long-term care services, Sunrise is entitled to apply for reimbursement of certain expenses. See 471 Neb. Admin. Code, ch. 12, § 011. To receive such reimbursement, Sunrise is required to submit its costs by filing a

periodic report to the Department. See 471 Neb. Admin. Code, ch. 12, § 011.09. It is certain changes in the reimbursement regulations which have given rise to this case.

Until June or July 1983, Meriel M. Stauffer was president of Sunrise and owned 90 percent of the stock. Her son, Lemar Tim Stauffer, also known as Tim Stauffer, owned the remaining 10 percent of the stock. Previous to 1983, Sunrise had been reimbursed by medicaid for return on equity to Meriel Stauffer. However, the January 1, 1984, revision of the regulations eliminated return on equity paid to stockholders or partners as a reimbursable cost. See 471 Neb. Admin. Code, ch. 12, § 011.05 (rev. Jan. 1, 1984).

In June or July 1983, Tim Stauffer purchased the nursing home facility from his mother. At the same time, Milford Rest Home and Meriel Stauffer, personally, borrowed $100,000 from Farmers and Merchants Bank (Bank), as evidenced by a demand note in that amount dated June 10, 1983. The purpose of the loan was stated on the face of the note to be "[p]ayment of Milford REst [sic] Home, Inc.[,] indebtedness to Meriel M. Stauffer." The note was signed by Meriel Stauffer in her personal capacity, and on behalf of Milford Rest Home by Meriel Stauffer as president and Tim Stauffer as secretary-treasurer.

The note was secured by a deed of trust on certain real estate, executed by Meriel Stauffer in her personal capacity, and by a $35,000 certificate of deposit. A loan guarantee agreement in favor of the Bank is also in the record. That document contains the typewritten names of Meriel Stauffer, Tim Stauffer, and one Connie Lou Stauffer. However, there are no signatures on the document.

After a routine audit of Sunrise's claimed expenses for the reporting period ending June 30, 1987, the Department disallowed Sunrise reimbursement for interest on the loan from the Bank. The auditor made the following note in his workpapers:

[Tim Stauffer] informed this auditor that the $100,000 was basically invested capital due his mother that had been retained in the business. Since the intent in establishing the note payable to Meriel was to record the invested funds

due her, the interest cost from the Farmers and Merchants Bank is disallowed. Per HIM 15 218.1, interest cost paid by the facility to a stockholder is not an allowable cost. Since the Farmers and Merchants Bank loan merely replaces the original note, the interest cost is not allowed.

An auditor for the Department testified at the hearing that because the adjustment was material, i.e., it had more than a $1,000 medicaid impact, the Department opened up and audited the reports for 1984-86. Through a series of field audits for the periods ending June 30, 1984, through June 30, 1987, and desk audits for the periods ending June 30, 1988, through June 30, 1990, the Department ultimately made adjustments to Sunrise's long-term care cost reports for the years 1984-90. Sunrise's interest expense on the loan from the Bank was denied for each of those years, and the Department also made other adjustments which are not before the court at this time.

Sunrise appealed the adjustment of interest expense, as well as other adjustments, and after a hearing, the director of the Department affirmed the adjustments. Sunrise appealed to the district court, which held that some of the director's adjustments were proper, but reversed the director's decision regarding the interest expense.

The Department timely appealed to the Nebraska Court of Appeals, contesting the part of the district court's order permitting reimbursement for the interest expense. Sunrise filed no cross-appeal. The case was removed from the Court of Appeals to this court pursuant to our authority to regulate the caseloads of the appellate courts of this state.

## ASSIGNMENTS OF ERROR

The Department contends that the district court erred in (1) placing the burden of proof for reimbursement on the Department; (2) finding that the original loan, i.e., Meriel Stauffer's equity interest, was necessary and proper, which finding was contrary to the law and regulations governing provider reimbursement and contrary to the evidence; and (3) failing to give due deference to the Department's interpretation of its rules and regulations and to the expertise of the agency director.

## ANALYSIS

### BURDEN OF PROOF

The district court, in its order, stated that "[t]here was *no evidence presented* which established that the original loan *was not necessary and proper* . . . ." (Emphasis supplied.) The Department contends that this statement is evidence that the district court erroneously shifted the burden of proof to the Department by requiring the Department to show that Meriel Stauffer's original loan to Sunrise *was not* necessary and proper, rather than requiring Sunrise to show that the loan *was* necessary and proper.

We agree that a long-term care facility seeking reimbursement from the Department of Social Services pursuant to state medicaid regulations has the burden to prove its entitlement thereto. This is consistent with our holdings in appeals of other administrative agency decisions.

For example, we have previously held, in appeals involving individual applicants for public assistance benefits, that one seeking public assistance has the burden of proving entitlement thereto. See, *Meier v. State*, 227 Neb. 376, 417 N.W.2d 771 (1988); *Dobrovolny v. Dunning*, 221 Neb. 67, 375 N.W.2d 123 (1985).

We have also held that an applicant for a certificate of public convenience as a common carrier has the burden of proof at a hearing before the Nebraska State Railway Commission to show that the conditions for granting such an application have been met. See, *In re Application of Canada*, 154 Neb. 256, 47 N.W.2d 507 (1951); *In re Application of Moritz*, 153 Neb. 206, 43 N.W.2d 603 (1950).

Sunrise does not dispute that it bears the burden of proof, but argues that the district court's statement is merely a finding that, after Sunrise had met its burden to show that the original loan was necessary and proper, the Department had failed to come forward with evidence to the contrary.

Sunrise would have us infer too much from the district court's order, which reflects no finding whatever that Sunrise had presented evidence that either the original loan or the replacement loan was necessary and proper. It is clear that the

district court erroneously stated the burden of proof. Nonetheless, an incorrect statement of the burden of proof is not reversible error per se, if a district court's decision in an APA appeal otherwise conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

### NECESSARY AND PROPER REQUIREMENTS

The remaining assignments of error present the issue of whether the district court erred in finding that, under Department regulations, Sunrise was entitled to medicare reimbursement for interest on a loan which was used to pay off the equity interest of an owner. This requires that we initially determine which regulations are properly before the court.

Generally, the appellate courts of this state will not take judicial notice of administrative rules or regulations. See *Donahoo v. Nebraska Liquor Control Comm.*, 229 Neb. 197, 426 N.W.2d 250 (1988). It is incumbent upon the party relying on an administrative rule or regulation to prove both its existence and its language. *Id.*

At the beginning of the administrative hearing, both parties entered into evidence various versions of the regulations at issue. One set of selected state administrative regulations was entered into evidence by each party. All regulations have printed headings identifying the source as either "Nebraska DPW Program Manual" or "Nebraska Department of Social Services Manual." All have printed revision dates in the headings, and some have handwritten notations by an unknown scrivener identifying the inclusive dates for which the particular regulations were in effect. The two sets of state administrative regulations, although organized differently in the parties' exhibits, appear to be substantially the same.

Two versions of the medicaid regulations were also entered into evidence. The version entered by Sunrise as exhibits 8D, 8E, and 8F is hand-labeled "HIM." The bottom of each page contains the printed words "Medicare and Medicaid Guide," but the ultimate source of these regulations is unknown. Although the content of the regulations appears to be related to the issues in this case, neither the testimony nor the briefs refer

to any of the regulations by the section numbers contained in those exhibits.

The regulations entered into evidence by the Department as exhibit 52 are also hand-labeled "HIM." The source of exhibit 52 is likewise undisclosed. Exhibit 52 appears to contain regulations similar to those in exhibits 8D, 8E, and 8F, but the exhibits are by no means identical, and the regulations in exhibit 52 have a different numbering system than the ones in exhibits 8D, 8E, and 8F. The testimony and the briefs refer to the regulation numbers contained in exhibit 52.

Because the origins of exhibits 8D, 8E, 8F, and 52 are undisclosed, the parties have failed to prove the existence of those particular regulations. However, cases are heard in the state appellate courts on the theory upon which they were tried in the lower courts. See *Donahoo, supra* (stating that the Supreme Court would proceed on the basis that the regulation in question paralleled a state statute, even though the regulation was not a part of the record, because both parties had proceeded on that assumption).

Because the parties both apparently relied on exhibit 52 by citing to regulation numbers contained therein, and apparently agree that exhibit 52 contains selected medicaid regulations, we will consider exhibit 52 to be the applicable medicaid regulations for purposes of our analysis. We will disregard the purported medicaid regulations contained in exhibits 8D, 8E, and 8F. We now turn to the content of the applicable regulations.

Allowable costs for reimbursement of Nebraska nursing care facilities for all of the time periods in question are governed by 471 Neb. Admin. Code, ch. 12, § 011.04 (rev. July 24, 1990; July 15, 1987; Dec. 1, 1984; Jan. 1, 1984; and Nov. 24, 1982).

Costs which are specifically unallowable are enumerated in 471 Neb. Admin. Code, ch. 12, § 011.05 (rev. July 24, 1990; July 15, 1987; Dec. 1, 1984; Jan. 1, 1984; and Nov. 24, 1982). Return on equity was first listed as an unallowable cost in the January 1, 1984, revision of § 011.05(12).

Additionally, the principles of reimbursement for provider's cost and the related policies under which the medicare extended-care facility functions, contained in medicare's

*"Provider Reimbursement Manual* (HIM-15)," are used to determine the cost for Nebraska nursing care facilities, with certain exceptions, and are incorporated by reference in 471 Neb. Admin. Code, ch. 12, § 011.03 (rev. July 24, 1990; July 15, 1987; Dec. 1, 1984; Jan. 1, 1984; and Nov. 24, 1982).

Reimbursement of interest expense is specifically provided for in the HIM regulations. Section 202.1 states in part:

> To be allowable under the Medicare program, interest must be: (1) supported by evidence of an agreement that funds were borrowed and that payment of interest and repayment of the funds are required; (2) identifiable in the provider's accounting records; (3) related to the reporting period in which the costs are incurred; and (4) necessary and proper for the operation, maintenance, or acquisition of the provider's facilities.

The Department does not challenge whether the replacement loan meets the first three requirements for payment of interest cost under § 202.1. Rather, the Department claims that Sunrise has not shown either the original loan from Meriel Stauffer or the replacement loan to be necessary and proper, the fourth requirement of § 202.1.

The HIM regulations define "necessary" and "proper." "Necessary means that the interest be incurred on a loan made to satisfy a financial need of the provider and for a purpose reasonably related to patient care." HIM § 202.2.

> Proper means that the interest be incurred at a rate not in excess of what a prudent borrower would have had to pay in an arm's-length transaction in the money market when the loan was made. In addition, the interest must be paid to a lender not related to the provider through common ownership or control.

HIM § 202.3.

The parties disagree as to whether the replacement loan was necessary. As to whether the replacement loan was proper, it is undisputed that the loan was an arm's-length transaction between unrelated entities. The dispute is simply whether interest on a replacement loan which otherwise meets the requirements of § 202.1 is reimbursable if interest on the original loan was not reimbursable. The record fails to reflect a

regulation that explicitly states that interest on a replacement loan such as the one at issue in this case is either allowable or unallowable.

Under the facts of this case, whether interest expense is allowable pursuant to HIM § 202.1 poses questions of both fact and law. Whether interest on the replacement loan is *necessary* presents a question of fact. Whether interest on the replacement loan is *proper*, on the other hand, presents a question of law.

We first inquire whether the district court's decision conforms to the law, that is, whether the replacement loan is proper. Ordinarily, deference is accorded to an agency's interpretation of its own regulations unless plainly erroneous or inconsistent. *In re Application of Jantzen*, 245 Neb. 81, 511 N.W.2d 504 (1994). However, agency regulations, properly adopted and filed with the Secretary of State of Nebraska, have the effect of statutory law. *Lynch v. Nebraska Dept. of Corr. Servs.*, 245 Neb. 603, 514 N.W.2d 310 (1994); *Nucor Steel v. Leuenberger*, 233 Neb. 863, 448 N.W.2d 909 (1989).

The meaning of a statute is a question of law, and a reviewing court is obligated to reach its conclusions independent of the determination made by the administrative agency. *Central Platte NRD v. State of Wyoming*, 245 Neb. 439, 513 N.W.2d 847 (1994). This court is obligated to reach an independent conclusion as to whether the Department's interpretation of its regulations was plainly erroneous or inconsistent, as was the district court.

For the sake of simplicity, we have referred to Meriel Stauffer's financial relationship with Sunrise as a "loan." However, it is clear that reimbursement of payments to Meriel Stauffer, whether characterized as interest on a loan or as return on equity, would have been prohibited by Department regulations during the years in question, 1984-90. If the payments were considered to be return on equity, they were an unallowable cost under 471 Neb. Admin. Code, ch. 12, § 011.05(12). If the payments were interest on a loan, they were unallowable under HIM §§ 202.1 and 202.3, because the lender, Meriel Stauffer, and the borrower, Sunrise, were related parties, and thus the interest was not proper.

However, it does not necessarily follow that interest on a

replacement loan is likewise an unallowable cost in the absence of a regulation specifically disallowing reimbursement for such costs.

The Court of Appeals of Maryland considered a similar situation in *Liberty Nursing v. Department*, 330 Md. 433, 624 A.2d 941 (1993). In that case, a grandson inherited a majority share in a nursing home business from his grandmother. The land and buildings used by the nursing home were owned by the grandmother's estate and were leased to the nursing home.

Because there were insufficient liquid assets in the estate to pay the estate taxes, it became necessary to sell the facilities. The grandson bought the facilities himself rather than sell them to a third party. The purchase was financed through a bank at 11 percent interest in an arm's-length transaction and was secured by a mortgage on the facilities. The grandson had no ownership in, or control of, the bank.

The interest on the loan was disallowed under the Maryland Medical Assistance Program on the ground that the nursing home, the grandson, and the grandmother's estate were "related organizations." The grandson appealed to the Nursing Home Appeal Board, the circuit court for Baltimore City, and the Court of Special Appeals, all of which affirmed the disallowance of the interest cost.

The Maryland Court of Appeals reversed the lower tribunals' rulings, stating that for purposes of the relatedness test, "the relevant transaction is the loan transaction, not the transaction giving rise to it. Therefore, *the critical relationship is that of lender to borrower*, not seller to purchaser . . . ." (Emphasis supplied.) 330 Md. at 447, 624 A.2d at 948. The Maryland court pointed out that this is consistent with the purpose of the regulation, i.e., to " 'assure that loans are legitimate and are needed, and that the interest rate is reasonable.' " *Id.*

We agree with the reasoning of the Maryland Court of Appeals. Moreover, because the regulations in question have the effect of statutory law, we must give effect to the plain language contained therein. See *Association of Commonwealth Claimants v. Moylan, ante* p. 88, 517 N.W.2d 94 (1994). According to the plain language of HIM § 202.1,

interest paid to the Bank by Sunrise is a reimbursable expense and is proper.

Therefore, we hold that for purposes of determining whether interest on a loan is proper for purposes of medicaid reimbursement the inquiry must be whether the lender and the borrower of the loan in question are related entities, in the absence of a regulation to the contrary. There being no dispute that the loan was one between Sunrise and the Bank, unrelated parties, we hold that the loan is proper as defined by HIM § 202.3.

We next determine whether there was competent evidence from which the district court could conclude that the loan from the Bank to Sunrise was necessary. The Department contends that Sunrise has never shown that either loan was necessary.

Sunrise argues that the Department originally denied the interest expense on the basis that it was not proper, and that the Department's claim that the interest expense was also unnecessary represents a deviation from its original position. Sunrise bases this upon its auditor's workpapers at the time the interest expense was first disallowed. The auditor had written that "[p]er HIM-15 218.1, interest cost paid by the facility to a stockholder is not an allowable cost. Since the Farmers and Merchants Bank loan merely replaces the original note, the interest is not allowed."

The auditor's workpapers were dated "7-19-88." On September 20, 1988, the Department notified Sunrise by mail of cost adjustments for 1988, as well as for the previous 3 years. Adjustments to the interest expense for each of the 4 years were explained as follows: "To remove the interest on *unnecessary* borrowing. The loan was used to pay off a note payable to the stockholder." (Emphasis supplied.) Thus, it is clear that the Department not only considered the interest expense unnecessary from the beginning, but also notified Sunrise of that fact.

Sunrise also argues that, because the Department had reimbursed Sunrise for return on equity up until that item was made an unallowable expense, the Department must have considered the expense necessary, and therefore the replacement loan was also necessary.

We agree with the Department that Sunrise has failed to present evidence that either loan was necessary. There is no testimony as to the purpose of Meriel Stauffer's original loan to Sunrise or as to what the money was actually used for. There is likewise no testimony that the replacement loan was actually used to meet patient care needs.

Sunrise's accountant testified that a nursing home such as Sunrise, which has a high mix of medicaid patients, needed to have sufficient funds on hand to cover unreimbursed costs and that "[i]t could very well be" that the nursing home might need to get funds from an outside source to help with patient care. However, such a statement amounts to no more than speculation. The accountant at no time testified that either the loan from Meriel Stauffer or the loan from the Bank was actually used to cover unreimbursed costs of patient care.

Aside from a conclusory statement by Sunrise's accountant that the Department "fully believed [the return on equity] was related to patient care or they would not have paid it" prior to the time such expense was disallowed, there is no competent evidence in the record from which it could be determined whether either loan was related to patient care in any way. Therefore, the district court's decision is in error and must be reversed.

## CONCLUSION

Having reviewed the district court's judgment for error appearing on the record, and having found that the district court's decision is not supported by competent evidence, we reverse and remand the decision of the district court with direction to reinstate the order of the Department.

REVERSED AND REMANDED WITH DIRECTION.

WRIGHT, J., participating on briefs.

LANPHIER, J., not participating.