DENNIS C. SMITH, APPELLEE, v. STATE OF NEBRASKA, DEPARTMENT OF MOTOR VEHICLES, APPELLANT.

535 N.W.2d 694

Filed July 7, 1995. No. S-93-938.

Don Stenberg, Attorney General, and Jay C. Hinsley for appellant.

David Kimble for appellee.

White, C.J., Caporale, Fahrnbruch, Lanphier, Wright, and Connolly, JJ.

Lanphier, J.

On May 16, 1993, the appellee, Dennis C. Smith, was arrested by an officer of the Seward Police Department for driving while under the influence of alcohol. Prior to administering the chemical test which confirmed the concentration of alcohol in Smith's breath, the arresting officer read Smith an administrative license revocation advisement (the advisory form), which is required by state statute. The advisory form attempted to detail the consequences of refusing to submit to the breath test and the consequences of submitting to the test and failing it. Smith consented to the breath test, and the test confirmed an alcohol concentration in excess of the legal limit. Following an administrative hearing, Smith's motor vehicle operator's license was revoked for a period of 90 days by the director of the Department of Motor Vehicles. The sole issue in

this case is whether the arresting officer, by reading the advisory form, gave Smith adequate notice of the consequences of failing a breath test as required by Neb. Rev. Stat. § 60–6,197(10) (Reissue 1993). The advisory form failed to give Smith adequate notice of the consequences of failing a chemical test. We therefore affirm the order of the district court for Seward County which vacated the order of the director of the Department of Motor Vehicles revoking Smith's operator's license.

## BACKGROUND

As of January 1, 1994, the Nebraska Rules of the Road, chapter 39 of the Nebraska Revised Statutes, were renumbered. They are now codified at Neb. Rev. Stat. § 60–601 et seq. (Reissue 1993 & Cum. Supp. 1994). For convenience, we use the new numbering scheme.

Pursuant to § 60–6,197, any peace officer who has reasonable grounds to believe that an arrestee was operating a motor vehicle while under the influence of alcohol can require the arrestee to submit to a chemical test of his breath, blood, or urine. Section 60–6,197(10) mandates that any person who is requested to submit to a chemical test be advised of the consequences of refusing to submit to the test and the consequences of submitting to the test and failing it.

Since Smith failed the breath test, his motor vehicle operator's license was impounded and he was issued a temporary license. He was informed that unless he filed a petition with the Department of Motor Vehicles (Department) for review, his license would be automatically revoked 30 days from the date of his arrest.

On May 25, 1993, Smith requested an administrative hearing before the Department to contest the revocation. On May 26, the Department notified Smith that his administrative hearing would be conducted on June 3. At the hearing, the primary issue was whether the advisory form adequately informed Smith of the consequences of taking and failing a chemical test. By an order dated June 9, the director of the Department revoked Smith's operating license and privilege to operate a motor vehicle for 90 days.

On June 14, 1993, in accordance with § 60-6,208 and the Administrative Procedure Act, Smith filed a petition in the district court for Seward County seeking review of the director's order. On August 23, the appeal was heard by the district court. By its order of September 23, the district court determined that Smith was given inadequate notice of all the consequences of submitting to a test of one's breath if the chemical test discloses the presence of alcohol in a concentration in excess of the legal limit. The district court vacated and set aside the Department's order revoking Smith's license. The Department appealed the district court's order to the Nebraska Court of Appeals. By order of this court, the appeal was removed to our docket.

## ASSIGNMENTS OF ERROR

The Department asserts that the district court erred in finding that the arresting officer failed to give Smith adequate notice of the consequences of failing or refusing a chemical test of his blood, breath, or urine and erred by reversing the Department's order of revocation and ordering the reinstatement of Smith's license.

## STANDARD OF REVIEW

The judgment rendered or final order made by the district court in an Administrative Procedure Act appeal may be reversed, vacated, or modified by the Supreme Court or the Court of Appeals for errors appearing on the record. *Wagoner v. Central Platte Nat. Resources Dist.*, 247 Neb. 233, 526 N.W.2d 422 (1995); *Sunrise Country Manor v. Neb. Dept. of Soc. Servs.*, 246 Neb. 726, 523 N.W.2d 499 (1994); *Abbott v. Department of Motor Vehicles*, 246 Neb. 685, 522 N.W.2d 421 (1994).

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the decision made by the court below. *Anderson v. Nashua Corp.*, 246 Neb. 420, 519 N.W.2d 275 (1994).

## ANALYSIS

Any person who operates a motor vehicle in Nebraska is deemed to have given his or her consent to submit to a chemical

test or tests of his or her blood, breath, or urine for the purpose of determining the concentration of alcohol in his or her body. § 60-6,197(1). A person who refuses to submit to the test is subject to an automatic administrative license revocation. § 60-6,197.

Prior to 1993, Nebraska law provided for administrative license revocation only when a person refused to submit to a chemical test and when such refusal was not shown to be reasonable. Neb. Rev. Stat. § 39-669.16 (Reissue 1988). After January 1, 1993, a person who agreed to submit to the chemical test and failed it also became subject to automatic administrative license revocation. § 60-6,205(3). Today, in both circumstances, the arresting officer immediately impounds and revokes the operator's license and issues the driver a temporary license. § 60-6,205(2), (3), and (4). The temporary license expires and the revocation is automatically effective 30 days after the arrest unless successfully appealed. § 60-6,205(2) and (3).

### ADVISORY REQUIRED BY STATUTE

Prior to requiring an arrestee to submit to a chemical test or refuse to submit, the arresting officer shall advise the arrestee of the consequences of both choices. § 60-6,197(10). Formerly, the statute only required that the arresting officer advise the arrestee of the consequences of refusing to submit to a chemical test. Neb. Rev. Stat. § 39-669.08(5) (Reissue 1988). That statute was amended, and effective January 1, 1993, the arrestee "shall be advised of . . . the consequences if he or she submits to such test and the test discloses the presence of a concentration of alcohol in violation of subsection (1) of section [60-6,196]." 1992 Neb. Laws, L.B. 291, § 5.

In interpreting the former statute, we stated that the purpose of requiring arresting officers to advise drivers of the consequences of a refusal to take a breath test is to ensure that the driver knows and is in a position to make a rational and voluntary decision as to whether he or she will comply with law. *State v. Deets*, 234 Neb. 307, 450 N.W.2d 696 (1990). If it can be shown that the licensee was properly advised, the only understanding required by the licensee is an understanding that

he or she has been asked to take a test. See, *id.*; *State v. Beerbohm*, 229 Neb. 439, 427 N.W.2d 75 (1988); *Pollard v. Jensen*, 222 Neb. 521, 384 N.W.2d 640 (1986); *Martinez v. Peterson*, 212 Neb. 168, 322 N.W.2d 386 (1982).

As amended, the statute now requires a warning about the consequences of submission to the test. The Legislature also amended another section of the administrative license revocation provisions. Section 60-6,205(6)(c) allows a driver to successfully contest the revocation of his or her license by establishing that the arresting officer failed to advise of the consequences of failing the chemical test.

In ascertaining the meaning of a statute, an appellate court must determine and give effect to the purpose and intent of the Legislature as determined from the language of the statute considered in its plain, ordinary, and popular sense. *Anderson v. Nashua Corp., supra*; *In re Application of City of Lincoln*, 243 Neb. 458, 500 N.W.2d 183 (1993). It is our duty to discover, if possible, the Legislature's intent from the language of the statute itself. *Id.*

When the word "shall" appears in a statute, mandatory or ministerial action is presumed. Neb. Rev. Stat. § 49-802 (Reissue 1993). Section 60-6,197(10) states that a driver *shall* be advised of the consequences of submitting to the test and failing it. The word "consequence" is not defined by § 60-6,197(10). A consequence is the result following in natural sequence from an event. *Board of Trustees, etc., v. Miller*, 186 Okla. 586, 99 P.2d 146 (1940). "Cause" and "consequence" are correlative terms, and one implies the other. *Monroe v. Hartford Street Ry. Co.*, 76 Conn. 201, 56 A. 498 (1903).

The sensible reading of § 60-6,197(10) indicates that the Legislature intended drivers to be advised of the natural and direct legal consequences flowing from submitting to a chemical test and failing it.

### ADEQUACY OF ADVISORY FORM

The portion of the one-page advisory form which informed Smith of the consequences of failing a chemical test reads as follows:

I must further advise you that if you refuse to take the

test or tests as I direct, or if you submit to the test or tests, and the results disclose the presence of drugs or of alcohol in an illegal concentration, I am required to immediately impound your license, and your license will be automatically revoked in 30 days unless you file a petition within 10 days of your arrest and request a hearing.

The penalty for refusal is the revocation of your license or driving privilege for one year.

If you submit to the test or tests, and the results disclose the presence of drugs or alcohol in an illegal concentration, and your license has not been revoked within the last eight years, the penalty is the revocation of your license or driving privilege for 90 days. If your license has been revoked within the last eight years, the penalty is revocation of your license or driving privilege for one year.

The advisory form partially complied with § 60-6,197's mandate requiring that drivers be advised of the consequences of failing a chemical test. Smith was informed of some, but not all, of the administrative consequences of taking and failing the test. For example, Smith was not informed that in order to reinstate his license after the expiration of the revocation period, he would have to pay a reinstatement fee. See § 60-6,206(3).

Smith was not informed that the results of a valid chemical test could be competent evidence in any prosecution involving a driving under the influence offense. See § 60-6,201. A valid breath test given within a reasonable time after the accused was stopped is probative of a driving under the influence offense. *State v. Kubik*, 235 Neb. 612, 456 N.W.2d 487 (1990).

A separate part of the advisory form did inform Smith of the criminal penalties for first, second, third, and fourth or subsequent convictions of driving while intoxicated and refusal to submit to the test. However, as the Department concedes in its reply brief, the advisory form is not perfectly worded. The wording of the form is confusing as to whether those criminal penalties attach to the crime of driving while intoxicated or the crime of refusal to submit to the test or both.

In addition, there are more serious penalties including felonies which could result from a test which disclosed an

illegal concentration of drug or alcohol. By limiting the listed penalties in the advisory form to convictions of driving while intoxicated, the form could be considered not only inadequate but misleading.

As we stated in *State v. Deets*, 234 Neb. 307, 450 N.W.2d 696 (1990), the purpose of requiring arresting officers to advise drivers of the consequences of a refusal to take a breath test is to ensure that the driver is in a position to make a rational and voluntary decision. If it can be shown that the licensee was properly advised, the only understanding required by the licensee is an understanding that he or she has been asked to take a test in order to revoke the driver's license due to his or her refusal to submit to the test. See, *id.*; *State v. Beerbohm*, 229 Neb. 439, 427 N.W.2d 75 (1988); *Pollard v. Jensen*, 222 Neb. 521, 384 N.W.2d 640 (1986); *Martinez v. Peterson*, 212 Neb. 168, 322 N.W.2d 386 (1982).

When *Deets* and the other foregoing cited cases were decided, an operator's license could only be administratively revoked upon refusal to submit to the chemical test. An arresting officer's observations or the defendant's poor performance on field sobriety tests is sufficient evidence to sustain a conviction of driving under the influence. Thus, refusal to submit to the chemical test resulted in the consequence of administrative license revocation *in addition to* any other penalty. See *State v. Green*, 238 Neb. 328, 470 N.W.2d 736 (1991). Informing drivers of this additional consequence met the previous statute's directive.

Today, whether a driver refuses to submit to the test or takes the test and fails to pass it, the driver faces administrative license revocation. The Legislature has mandated that drivers shall be advised of the consequences in both situations. For example, this now includes the evidentiary consequences and the possibility of felony convictions.

The State argues that the disclosure statute be read in a manner which Justice Holmes referred to in a different setting as affording it "a little play in its joints." *Bain Peanut Co. v. Pinson*, 282 U.S. 499, 501, 51 S. Ct. 228, 75 L. Ed. 482 (1931).

Although the Department concedes that the advisory form is

not perfectly worded, the Department argues that the information conveyed is not in any way incorrect and is not false. In essence, the Department asserts that the disclosure is "close enough for government work." We disagree. The advisory form is not "close enough" and does not comply with the legislative requirement that drivers shall be advised of the legal consequences of failing a chemical test.

The dissent, relying on *State v. McGuire*, 493 So. 2d 559 (La. 1986), argues that § 60–6,197(10) does not require a law enforcement officer to embark upon a discussion of the legal consequences of submitting to and failing a chemical test. In *State v. McGuire*, the Supreme Court of Louisiana interpreted Louisiana's equivalent of Nebraska's informed consent statute. However, Louisiana's legislative mandate and the advisory form before the court in *State v. McGuire* are far different from § 60–6,197(10) and the advisory form before us today.

The dissent asserts that the advisory form administered by the officer in *State v. McGuire* was adequate. However, the Louisiana form was much more comprehensive than Nebraska's form. The Louisiana form advised the driver that the test results would be used against her in court and advised her of her constitutional rights. The Supreme Court of Louisiana noted that the advisory form conformed to a legislative directive which specifically delineated the legal consequences of which a driver must be informed. The statute before us provides no such delineation.

Smith was not properly advised of material and critical consequences of failing a breath test as required by § 60–6,197(10). Smith is not claiming that he failed to understand the advisory form. Smith is arguing that he never had the opportunity to understand all of the statutory consequences of failing the breath test because he was never informed of the consequences. It is impossible to understand information that is never conveyed. We agree that the advisory form in this case fails to comply with the statutory directive that a driver must be informed of the consequences of failing a chemical test before being required to submit to the test.

The Department argues that even if Smith was not properly advised of the consequences of failing the chemical test, the

revocation of his driver's license was proper because he was not prejudiced. The Legislature made the advisement of consequences mandatory by the use of the word "shall" in § 60-6,197(10). Section 60-6,205(6)(c) does not require a showing of prejudice. Smith is not required to show prejudice in order to prove that the arresting officer failed to comply with § 60-6,197(10)'s mandate.

## CONCLUSION

Smith was not fully advised of the consequences of submitting to the breath test and failing it as required by § 60-6,197(10). Therefore, the Department acted improperly in ordering that Smith's license be revoked. For the foregoing reasons, we affirm the order of the district court which reinstated Smith's operator's license.

AFFIRMED.

CONNOLLY, J., dissenting.

In my opinion, the advisory form which the law enforcement officer read to Smith was adequate under Neb. Rev. Stat. § 60-6,197(10) (Reissue 1993) to advise Smith of the consequences of taking and failing a chemical test.

The majority opinion holds that the advisory form only partially complied with the requirements of § 60-6,197(10). As examples of what was missing from the form, the majority opinion notes that Smith was not informed that (1) in order to reinstate his license after the expiration of the revocation period, Smith would have to pay a reinstatement fee; (2) the results of the chemical test *could* be competent evidence in any prosecution for driving under the influence; (3) failing the breath test would be probative of a driving under the influence offense; and (4) there were more serious penalties, including felonies, which could result from a test which disclosed an illegal concentration of drugs or alcohol.

The majority opinion ignores the Legislature's intent behind § 60-6,197(10). In construing a statute, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent as deduced from the whole will prevail

over that of a particular part considered separately. *State v. Joubert*, 246 Neb. 287, 518 N.W.2d 887 (1994). An appellate court must look at the statutory objective to be accomplished, problem to be remedied, or purpose to be served, and then place on the statute a reasonable construction which best achieves its purpose, rather than a construction which will defeat the purpose. *Id.*

The Legislature enacted 1992 Neb. Laws, L.B. 291, to provide

> a swift and sure method for administratively revoking a person's driver's license if he or she either refuses to submit to a test of his or her alcohol concentration under the state implied consent law or if such test of alcohol concentration indicates that he or she is under the influence of alcohol or drugs in violation of [§ 60–6,196].

Statement of Purpose, L.B. 291, Committee on Transportation, 92d Leg., 1st Sess. (Feb. 11, 1991). In passing L.B. 291, the Legislature intended to "provide a deterrent to persons who might be tempted to drink and drive." Statement of Purpose, *supra*.

The Louisiana Supreme Court decision in *State v. McGuire*, 493 So. 2d 559 (La. 1986) is directly on point. The statute in effect at the time of the *McGuire* decision required a law enforcement officer who requested a driver to submit to a chemical test to " 'first inform the person of the consequences of a refusal and the consequences if the test is conducted and the results indicate a blood alcohol concentration of .10 percent or above . . . .' " *Id.* at 561. The warning administered by the officer in *McGuire* contained only the following language with regard to the consequences of submitting to and failing the chemical test: " '[T]est results of .10 percent or above will be used against you in court.' . . . 'If you submit to the test, and the test results show a blood alcohol level of .10 percent or above, your driver's license shall be suspended for a minimum period of three (3) months.' " *Id.* at 562.

The court in *McGuire* held that the warning administered by the officer constituted satisfactory compliance with the statute requiring the officer to inform the driver of the consequences of failing the test. The *McGuire* court specifically held that the

statute did not require a law enforcement officer to embark upon a discussion of the legal consequences of submitting to and failing the chemical test.

I would reach the same decision in the case at bar that the Louisiana Supreme Court reached in *McGuire*. Of the four deficiencies cited by the majority opinion in the advisory form, three dealt with the use of the chemical test results in subsequent criminal prosecutions. Those legal consequences existed prior to the passage of L.B. 291, and the Legislature never saw fit to require a law enforcement officer to inform the driver of those consequences. See *State v. Deets*, 234 Neb. 307, 450 N.W.2d 696 (1990). The passage of L.B. 291 enabled law enforcement officers to immediately revoke and impound a driver's license for submitting to and failing a chemical test. The purpose of L.B. 291 was to combat the drunk driving problem with a swift and efficient administrative procedure, not to require police officers to provide drivers with a litany of their rights and the consequences of their actions. The only information the Legislature intended for law enforcement officers to have to impart to drivers pursuant to § 60-6,197(10) was with regard to the new administrative consequence—if the driver submitted to and failed a chemical test, his or her license would be revoked.

The majority also cited the lack of information regarding a reinstatement fee as one of the consequences about which Smith should have been informed. Pursuant to *State v. Deets, supra*, the purpose of the statute requiring the advising of consequences is to provide the driver with relevant information ensuring that "the driver knows and is in a position to make a rational and voluntary decision as to whether he will comply with the law." 234 Neb. at 308, 450 N.W.2d at 697. If a law enforcement officer is required to inform the driver of the potential monetary consequences of failing a chemical test, such as the payment of a reinstatement fee, why not require the arresting officer to inform drivers that they could lose their jobs, that their insurance premiums might be increased, and that they might incur attorney fees if charges are filed?

Clearly, the only relevant consequence of failing a chemical test contemplated by § 60-6,197(10) is the administrative

revocation of the license. Smith was sufficiently informed of that consequence.

WRIGHT, J., joins in this dissent.